UNITED TRANSPORTATION
UNION, Petitioner,

v.

INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents,

Norfolk Southern Corporation, Southern
Railway Company, and Illinois Central
Railroad Company, Intervenors.

No. 88–1414.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 2, 1989.

Decided March 28, 1989.

Gordon P. MacDougall, Washington, D.C., for petitioner.

Laurence H. Schecker, Atty., I.C.C., with whom Robert S. Burk, Gen. Counsel, Henri F. Rush, Deputy Gen. Counsel, John J. McCarthy, Jr., Deputy Associate Gen. Counsel, I.C.C., and Charles F. Rule, Asst. Atty. Gen., John J. Powers III and Andrea Limmer, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondents.

Jeffrey S. Berlin, with whom Amy R. Doberman, Washington, D.C., R.J. Cooney, W.P. Stallsmith, Jr., Atlanta, Ga., Robert H. Wheeler, and William C. Sippel, Chicago, Ill., were on the brief, for intervenors.

Before WALD, Chief Judge, MIKVA, Circuit Judge, and OBERDORFER,[*] District Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This case turns on whether a pending petition for administrative reconsideration renders the underlying agency decision nonfinal, and hence unreviewable, with respect to the petitioning party.

The United Transportation Union ("UTU") seeks review of an order of the Interstate Commerce Commission ("Commission") denying its request to reopen the administrative record for further evidence. *Southern Railway Co., et al.—Purchase— Illinois Central Railroad Co. Line* (served May 18, 1988) (*"Purchase Decision "*). We hold that the order at issue is not final with respect to UTU, because UTU has filed a petition for reconsideration that remains pending before the Commission. The Commission's order therefore cannot be currently reviewed by this court, and we dismiss the petition for lack of jurisdiction.

---

[*] The Honorable Louis F. Oberdorfer, of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

### I.

On October 30, 1987, Southern Railway Company ("Southern"), its parent Norfolk Southern Corp. ("Norfolk Southern"), and Illinois Central Railroad Company ("Illinois Central") filed an application for Commission approval, pursuant to 49 U.S.C. §§ 11343 *et seq.*, of Southern's proposed acquisition of about 199 miles of Illinois Central track between Fulton, Kentucky, and Haleyville, Alabama, and about 154 miles of trackage rights over Illinois Central's lines between Fulton, Kentucky, and Centralia, Illinois. Illinois Central concurrently filed a petition under 49 U.S.C. § 10505 for an exemption, contingent on Commission approval of Southern's acquisition and trackage rights application, from the prior approval requirements of 49 U.S.C. §§ 10903 *et seq.*, to discontinue about 81 miles of trackage rights between Haleyville and Birmingham, Alabama.

Petitioner UTU is the collective bargaining representative of train service employees (switchmen, trainmen, conductors, and firemen) of Southern and Illinois Central. Prior to its agreement with Illinois Central, Southern had agreed with UTU members who worked on Southern's lines to establish work rules that would apply to the Illinois Central lines once they were acquired by Southern. This collective bargaining agreement ("July 29th agreement") was to take effect upon Commission approval of the acquisition and was to govern operations by Southern over the lines and trackage rights to be acquired from Illinois Central, but was not reported to the Commission in the acquisition and trackage rights application.

On November 27, 1987, the Commission accepted the application and related petition for consideration and established a schedule for the filing of comments and submission of evidence in connection with the application. 52 Fed.Reg. 45,696 (1987). Under this schedule, interested parties were to file comments by December 28, 1987, and parties opposing the application were to submit evidence by January 11, 1988. *Id.*

Only UTU opposed the proposed transaction. *See Purchase Decision* at 3. UTU's Illinois legislative director filed comments and submitted evidence expressing concern with reduced rail traffic in Illinois, the continued viability of Illinois Central, and employee protective conditions, but did not refer to the July 29th agreement between Southern and UTU. *See* Joint Appendix ("J.A.") at 34–35, 38–39.

On January 20, 1988, Southern, Norfolk Southern, and Illinois Central waived rebuttal evidence and moved the Commission to close the administrative record. J.A. at 42–46. UTU did not oppose the motion.

While the acquisition application was pending before the Commission, Illinois Central's UTU members voluntarily entered into negotiations with Southern and Illinois Central to arrive at an implementing agreement in anticipation of Commission approval of the proposed transaction. These negotiations led to voluntary arbitration under article I, section 4 of *New York Dock. See New York Dock Ry.—Control —Brooklyn Eastern Dist.*, 360 I.C.C. 60, 84–90 (1979), *aff'd sub nom. New York Dock Railway Co. v. United States*, 609 F.2d 83 (2d Cir.1979). During arbitration, Illinois Central's UTU members argued that the July 29th agreement was invalid because Illinois Central employees had neither notice of the agreement nor an opportunity to participate in its formulation. J.A. at 52. On March 17, 1988, the referee suggested (although the parties dispute this) that the Illinois Central UTU employees might wish to seek clarification from the Commission as to the effect of the July 29th agreement on the proposed transaction. *Id.*

Accordingly, on March 28, 1988, three months after the close of the comment period and two months after the deadline for the submission of evidence, UTU petitioned to reopen the record for consideration of the July 29th agreement. J.A. at 49–54. Noting that the acquisition and trackage rights application stated that "[n]o employee protective agreements have been reached with respect to any craft," UTU maintained that the July 29th agree-

ment was an implementation agreement and therefore within the jurisdiction of the referee under article I, section 4 of *New York Dock.* In its brief before this court, UTU alleges that it was not aware of the July 29th agreement between Southern and Illinois Central's UTU members until late November 1987.

Southern, Norfolk Southern, and Illinois Central, in a reply filed April 13, 1988, opposed UTU's petition and argued, *inter alia,* that UTU could seek relief of any adverse ruling by the referee by petitioning the Commission for review of the arbitrator's award at that time. J.A. at 58–82.

In a decision served May 18, 1988, the Commission approved the proposed transaction, imposed the standard employee protective provisions of *New York Dock,* and denied UTU's petition to reopen for further evidence. *Purchase Decision* at 2–6. With respect to its denial of UTU's petition to reopen, the Commission stated that:

> By petition filed March 28, 1988, UTU on behalf of its Illinois Central Railroad General Committee of Adjustment (UTU/IC) seeks reopening of the record for further evidence. It seeks a Commission ruling to the effect that an arbitration referee has jurisdiction over a crew consist agreement entered into between Southern and UTU on July 27 [sic] 1987. NS and IC replied to the petition. *The issue in the petition is premature since it has been raised in the proceedings now before the arbitrator and, upon issuance of the arbitrator's decision, UTU/IC can appeal the matter to the Commission.* The petition will be denied as will UTU/IC's April 25, 1988 request for leave to file a reply to applicant's reply.

*Id.* at 3 n. 9 (emphasis added) (citing *Chicago & North Western Transp. Co.—Abandonment—Near Dubuque and Oelwein, IA,* 3 I.C.C.2d 729 (1987), *aff'd sub nom. International Bhd. of Electrical Workers v. ICC,* 862 F.2d 330 (D.C.Cir.1988)). On May 2, 1988, the referee issued an arbitral award imposing an implementing agreement.

On June 7, 1988, UTU petitioned the Commission for an administrative stay of the proceeding and, pursuant to 49 C.F.R. § 1115.3(a), either administrative reconsideration of the *Purchase Decision* or review of the May 2, 1988 arbitral award. On June 24, 1988, the Commission denied the petition for an administrative stay. The petition for reconsideration remains pending before the Commission.

On June 8, 1988, UTU filed the instant petition for review, asserting that the Commission's decision denying its petition to reopen was arbitrary and capricious. On June 24, 1988, this court denied UTU's motion for a stay of the decision pending judicial review. The *Purchase Decision* became effective on June 27, 1988, and Southern and Illinois Central consummated their transaction on that date.

## II.

UTU claims jurisdiction in this court pursuant to 28 U.S.C. §§ 2321(a), 2342(5); 49 U.S.C. § 10327(i); and Fed.R. App.P. 15. The provision at issue in this case is 49 U.S.C. § 10327(i), which states in pertinent part:

> Notwithstanding this subtitle [governing interstate commerce and permitting the Commission to reopen and reconsider its orders], *an action of the Commission under this section * * * is final on the date on which it is served,* and a civil action to enforce, enjoin, suspend, or set aside the action may be filed after that date.

49 U.S.C. § 10327(i) (Supp.1988) (emphasis added). The issue in this case is whether this provision permits a party to obtain judicial review of an agency decision that is otherwise final if that party has also filed a petition for reconsideration that remains pending before the agency.

We think it plain that a pending petition for rehearing must render the underlying agency action nonfinal (and hence unreviewable) with respect to the filing party. The rationale for such a rule is straightforward and was well-stated by this court almost thirty years ago:

Where a motion for rehearing is in fact filed there is no final action until the action is denied * * *. [W]hen the party elects to seek a rehearing *there is always a possibility that the order complained of will be modified in a way which renders judicial review unnecessary.* Practical considerations therefore, dictate that when a petition for rehearing is filed, review may properly be deferred until this has been acted upon.

*Outland v. CAB,* 284 F.2d 224, 227–28 (D.C.Cir.1960) (emphasis added); *see also* K. Davis, *Administrative Law Treatise* § 26:12, at 471 (1983) ("when a petition for rehearing has been filed, agency action is not final for purposes of review until the agency acts on the petition").

We are guided specifically by recent Supreme Court precedent on our interpretation of 49 U.S.C. § 10327(i). In *ICC v. Brotherhood of Locomotive Engineers,* 482 U.S. 270, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1988), the Court held that a "timely petition for administrative reconsideration stay[s] the running of the Hobbs Act's limitation period until the petition ha[s] been acted upon by the Commission." *Id.* 107 S.Ct. at 2368. The Court acknowledged that the language of 49 U.S.C. § 10327(i) suggested a contrary conclusion, but drew an analogy between that section and section 10(c) of the Administrative Procedure Act, 5 U.S.C. § 704, which provides that "[e]xcept as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section [entitled 'Actions Reviewable'] whether or not there has been presented or determined an application for * * * any form of reconsideration * * *." The Court noted that this provision "has long been construed by this and other courts merely to relieve parties from the *requirement* of petitioning for rehearing before seeking judicial review * * *, but not to prevent petitions for reconsideration that are actually filed from rendering the orders under reconsideration nonfinal." 107 S.Ct. at 2369 (citations omitted). Finding "no basis for distinguishing the language of § 10327(i) from that of § 704," the Court ruled that the appeal was therefore timely. *Id.*

Moreover, two of our sister circuits have followed *Brotherhood of Locomotive Engineers* to bar judicial review of agency action where the agency has not acted on a petition for reconsideration filed by the petitioning party. *See West Penn Power Co. v. EPA,* 860 F.2d 581 (3d Cir.1988); *Winter v. ICC,* 851 F.2d 1056 (8th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988). We discern no reason for reaching a contrary view.

In *Winter,* for example, the Eighth Circuit rejected the argument that, because in multiparty proceedings one party may seek judicial review while another party seeks reconsideration, an agency decision may be final for one purpose but nonfinal for another purpose. The court instead found that:

[N]o cases hold that the same party may simultaneously seek both judicial and administrative review. We are convinced that under the circumstances of this case *Brotherhood of Locomotive Engineers* stands for the proposition that once the unions filed petitions to reopen and to revoke the exemption, the original [agency decision] became nonfinal.

*Winter,* 851 F.2d at 1062.

The Third Circuit reached the same conclusion in the context of petitions for reconsideration under the Clean Air Act. The court noted that "permitting simultaneous jurisdiction raises the possibility that a court of appeals will expend extensive judicial time on a case only to have agency reconsideration nullify its efforts." *West Penn,* 860 F.2d at 585 (citing *Outland,* 284 F.2d at 227). Applying *Brotherhood of Locomotive Engineers* to the situation where a petition for reconsideration is pending (as in this case), the court found that "there is no principled way to distinguish between the concept of finality for purposes of triggering the running of a time limit for appeals and the concept of finality for the purposes of appellate court jurisdiction." *Id.*

The *West Penn* court also rejected the argument that a decision can be final for some purposes but not others, noting the

"incoherence in defining the term differently for triggering time limits for review and for purposes of making an action reviewable. * * * [F]inality with respect to agency action is a party-based concept." *Id.* at 586. The court reasoned that:

> Petitioners have the option of proceeding directly to the court of appeals, or giving the agency another chance to consider the matter and applying to the court of appeals afterward. We can see no justification for allowing a petitioner to apply to both the court and the agency at the same time. On the contrary, *such a regime could lead only to a waste of resources on the part of the agency, or the court, or both, without any countervailing benefit.*

*Id.* (emphasis added) (citing *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982)). The court concluded that "we remain convinced that we have no jurisdiction to consider this petition while there is an outstanding petition for agency reconsideration," *id.* at 587, and explained:

> the courts of appeals cannot have jurisdiction over a petition for review when a petition for reconsideration brought by the same party is still pending before the agency. Finality for purposes of entitlement to judicial review should mean the same thing that finality means for purposes of triggering the time limit for appeal. Thus we find ourselves bound by *Locomotive Engineers,* which interpreted section 704, notwithstanding its literal meaning, as allowing petitions for reconsideration to render agency actions nonfinal.

*Id.* at 587–88.

We are persuaded that the reasoning of these decisions squarely supports our holding and applies to the facts of this case. UTU admits that its petition for reconsideration of the *Purchase Decision* remains pending before the Commission. Until the Commission disposes of UTU's petition for reconsideration or until UTU withdraws its petition for reconsideration, we conclude that the *Purchase Decision* is not final for purposes of judicial review and that there-

fore this court has no jurisdiction to review it.

We acknowledge petitioner's citation to a contrary statement in a footnote in *American Trucking Associations, Inc. v. ICC,* 697 F.2d 1146, 1148 n. * (D.C.Cir.1983) (Scalia, J.) (section 704 "permits judicial appeal and request for agency reconsideration to be pursued simultaneously"), but we readily conclude that this view does not survive Justice Scalia's holding in *Brotherhood of Locomotive Engineers* that section 704 has been construed "not to prevent petitions for reconsideration that are actually filed from rendering the orders under reconsideration nonfinal," 107 S.Ct. at 2369.

## III.

If UTU withdraws its petition for reconsideration or if the Commission denies it, then this court will have jurisdiction to review the Commission's decision not to reopen the record. UTU may then file a new petition for review. Because we hold that UTU's pending petition for agency reconsideration of the Commission's order renders the order nonfinal and hence unreviewable at this time, we do not reach the merits of petitioner's claim that the Commission's refusal to reopen was arbitrary and capricious and that the Commission should have determined whether the July 29th agreement was an implementing agreement, subject to the protective conditions of *New York Dock,* article I, section 4. The petition for review is

*Denied.*