**WEST PENN POWER COMPANY, Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and Lee M. Thomas, Administrator, Respondents.**

No. 87–3220.

United States Court of Appeals, Third Circuit.

Argued Nov. 6, 1987.

Decided Nov. 1, 1988.

Rehearing and Rehearing In Banc Denied Jan. 18, 1989.

---

9. Nothing herein affects the summary judgment granted on the ERISA count.

Lawrence A. DeMase (argued), Stanley R. Geary, Edward Gerjuoy, Rose, Schmidt, Chapman, Duff & Hasley, Pittsburgh, Pa., for petitioner.

Gerald H. Yamada, Deputy Gen. Counsel, Alan W. Eckert, Associate Gen. Counsel, Charles S. Carter (argued), Asst. Gen. Counsel, Joseph Feller, Asst. Gen. Counsel, U.S. E.P.A., Washington, D.C., Roger J. Marzulla, Acting Asst. Atty. Gen., Lisa F. Ryan, Environmental Defense Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Robert Smolski, Office of Regional Counsel, U.S. E.P.A., Region III, Philadelphia, Pa., for respondents.

John M. Elliott, Stephen C. Braverman, Philip J. Katauskas, Baskin Flaherty Elliott & Mannino, P.C., Philadelphia, Pa., for amicus curiae Pennsylvania Coal Min. Ass'n.

Richard P. Mather, Asst. Counsel, Com. of Pa., Dept. of Environmental Resources, Harrisburg, Pa., for amicus curiae Com. of Pa.

Before SLOVITER and BECKER, Circuit Judges, and COWEN, District Judge.*

* The Honorable Robert E. Cowen, United States District Judge for the District of New Jersey, sitting by designation. Since the argument of this appeal, Judge Cowen has become a member of this Court.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is a petition for review of the Environmental Protection Agency's denial of a request to redesignate an area in Western Pennsylvania to "attainment" status under the Clean Air Act. 42 U.S.C. §§ 7401–7642 (1982). Resolution of the petition itself would require us to determine whether petitioner West Penn Power Company's construction of a tall (307–meter) smokestack in reliance on EPA's formal approval of a state implementation plan incorporating the construction of such stack can insulate the company from future, more stringent regulations, which render the state's plan inadequate because of the stack's excessive height. This opinion, however, addresses the question whether we have jurisdiction over the petition in view of the fact that there is a petition for reconsideration still pending before the agency.

Long after this case was argued, in a footnote to a supplemental letter-brief, West Penn brought to our attention that prior to bringing its petition for review in this Court it had petitioned EPA for reconsideration of its determination that Armstrong County was not in attainment status and that the reconsideration petition was still pending before EPA. Believing that this might raise serious questions about our jurisdiction, we solicited memoranda from the parties as to the effect of the outstanding petition for reconsideration on our jurisdiction. In their responsive submissions, the parties both argued that it had no effect. However, we have an independent duty to examine our jurisdiction. See Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986).

Whether an agency order is final and thus reviewable in a court of appeals when a party has petitioned for agency reconsideration is a difficult question that has divided the courts of appeals. Compare Northside Sanitary Landfill, Inc. v. Thomas, 804 F.2d 371, 378–79 (7th Cir.1986) (allow-

ing simultaneous agency and court jurisdiction) and *American Trucking Associations, Inc. v. ICC*, 697 F.2d 1146, 1148 n. * (D.C.Cir.1983) (same) *with Winter v. ICC*, 851 F.2d 1056, 1062 (8th Cir.1988) (disallowing simultaneous jurisdiction).[1] The language of 5 U.S.C. § 704 (1982), the relevant portion of the Administrative Procedure Act ("APA"), seems on its face to permit such simultaneous jurisdiction, *see infra.* The *American Trucking* and *Northside* opinions of the D.C. Circuit and 7th Circuit, *supra,* rely on that plain language. However, the Supreme Court's recent decision in *ICC v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 107 S.Ct. 2360, 2368–69, 96 L.Ed.2d 222 (1987), interprets section 704 differently. For the reasons that follow, we come to the conclusion that the pendency of the reconsideration petition deprives the agency decision of finality and thus puts it beyond our present ability to review.

## I.

West Penn is an electric utility in Western Pennsylvania. West Penn's coal-fired Armstrong generating station is primarily responsible for the high levels of sulfur dioxide in the local (Armstrong County) air quality region. Attainment status for the region depends on the extent of credit allowable for improvements in local air quality that stem from the dispersive effect of the 307–meter smokestack.

This dispute results from a long-standing controversy about the extent to which a power company can obtain Clean Air Act credit for reducing pollutants in the immediate vicinity of a power plant by sending the pollutants elsewhere by means of an extraordinarily high smokestack. The "elsewhere" is the rub, for smoke from high stacks, while avoiding the downward-pulling effect of wind currents hitting low-lying obstacles, tends to catch the high winds and is generally regarded as the cause of "acid rain." The original Clean Air Act Amendments of 1970 left this issue open and led to varying policy decisions and statutory interpretations among the courts and EPA. *See Sierra Club v. EPA*, 719 F.2d 436, 440 (D.C.Cir.1983), *cert. denied*, 468 U.S. 1204, 104 S.Ct. 3571, 82 L.Ed.2d 870 (1984) (discussing case law and regulatory history). However, in 1977, Congress attempted to resolve the issue by adding section 123 to the Clean Air Act, clearly pronouncing a preference for pollution reduction rather than pollutant dispersion, and "bann[ing] virtually all reliance on tall stacks or 'any other dispersion technique' in achieving compliance with ambient air quality standards." *Id.* (quoting § 123(a), 42 U.S.C. § 7423(a) (Supp. V 1981)).

Section 123 declares that no source of pollution can get credit for any improvements in local air quality that merely stem from the dispersive effect of a stack that exceeds that height mandated by "good engineering practice," or "GEP." West Penn's huge Armstrong Station stack was nonetheless built in conformity with and in reliance upon proposed regulations promulgated by EPA pursuant to section 123 on January 12, 1979. In fact EPA approved Pennsylvania's 1981 revision to its state implementation plan ("SIP"), which required West Penn to replace its two 70–meter stacks with one 307–meter stack. A SIP is a statutorily required roadmap for achieving and maintaining air quality attainment status in each of a state's air quality regions, and the SIP approval indicated EPA's belief that this new stack would allow Armstrong County to attain national ambient air quality standards ("NAAQS").

However, EPA's proposed regulations, upon which West Penn relied in constructing its tall stack, were significantly altered in their final form. Final regulations, which were much less stringent than the 1979 proposed rules, were promulgated in 1982, but were in turn invalidated by the decision in *Sierra Club, supra.* This decision led EPA to promulgate, in 1985, regu-

---

1. The submissions of both West Penn and the EPA suggest that it is the understanding of the environmental bar that petitions for reconsider-ation before the agency have no effect upon appellate jurisdiction.

lations so stringent that they rendered West Penn's previously conforming 307–meter stack well beyond GEP height.

Applying these more stringent stack height regulations to the Armstrong stack, it became clear that their disallowance of credit for any pollution reduction that stems from the extraordinary height of the stack would render Armstrong County no longer in attainment status. Pennsylvania nevertheless requested that EPA act on the state's long-standing request to redesignate the county to attainment status, insisting that EPA "honor its previous commitment" under the 1979 regulations and 1981 SIP approval. EPA solicited notice and comment on Pennsylvania's proposal and, on February 5, 1987, published a final rule denying Pennsylvania's reclassification request, primarily because no showing had been made that the Armstrong stack was in compliance with the 1985 stack height regulations. 52 Fed.Reg. 3,646 (1987). West Penn thereupon filed in this Court a timely petition for review of that decision,[2] as well as a petition for reconsideration with EPA.

## II.

The parties agree that this Court's jurisdiction must derive from Section 307(b)(1) of the Clean Air Act (codified at 42 U.S.C. § 7607(b)(1) (1982)). That section, in relevant part, provides that "[a] petition for review of ... any other *final* action of the Administrator under this chapter ... which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit." (em-

**2.** The petition contends that to apply the more restrictive 1985 stack height regulations to a stack which was constructed, at a cost of $13 million, in reliance on EPA's 1981 SIP approval and solely to comply with the Clean Air Act, violates principles of procedural fairness and administrative law. EPA's SIP approval, which was a final agency action, is termed by West Penn an "ad hoc rule," which, it submits, cannot be retroactively displaced.

**3.** Section 704 provides in full:
Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural,

phasis added). There is no question that the Administrator's order with respect to Armstrong County was "other final action" for purposes of the statute at the time it was issued. The only question is whether West Penn's subsequent filing of a petition for reconsideration "rendered the orders under reconsideration nonfinal" for purposes of obtaining appellate jurisdiction. *Locomotive Engineers*, 107 S.Ct. at 2369.

It makes sense to define "finality" under the Clean Air Act in the same way that it is defined in administrative law generally. The APA provides a general definition of administrative finality. It states that an "agency action otherwise final is final for the purposes of this section *whether or not there has been presented or determined an application for ... any form of reconsideration.*" 5 U.S.C. § 704 (emphasis added).[3] As then Judge Scalia put it, "[t]he Administrative Procedure Act explicitly permits judicial appeal and request for agency reconsideration to be pursued simultaneously." *American Trucking*, 697 F.2d at 1148 n. *.

However, doubt has been cast on this facially correct interpretation of section 704 by a line of cases construing agency finality for purposes of determining when the time limit for appeal expires. Notwithstanding the language of section 704, the courts of appeals have consistently held that the filing of a petition for reconsideration stays the running of the limitations period, because the filing of the petition renders the prior decision "nonfinal." *See, e.g., Outland v. CAB*, 284 F.2d 224 (D.C. Cir.1960);[4] *cf. Cities of Newark, New Cas-*

or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

**4.** In *Outland* the D.C. Circuit split with the Ninth Circuit, which had previously adopted a contrary interpretation of section 704. The next

tle, & Seaford v. FERC, 763 F.2d 533 (3d Cir.1985) (construing the Federal Power Act to require that the time limit for an appeal will be tolled when a timely petition for reconsideration of the action is before FERC).

In *Locomotive Engineers*, Justice Scalia, writing for the Supreme Court, adopted this view. He explained that the language of section 704 "has long been construed by this and other courts merely to relieve parties from the *requirement* of petitioning for rehearing before seeking judicial review ... but not to prevent petitions for reconsideration that are actually filed from rendering the orders under reconsideration nonfinal." 107 S.Ct. at 2369 (emphasis in original).[5] Justice Scalia did not give reasons for adopting this approach, but cited with approval an earlier D.C. Circuit case, *Outland*, 284 F.2d at 228. That case explained that if the running of the limitations period were not stayed, litigants petitioning for reconsideration would be required to file "protective appeals" in the federal courts to preserve their right to an Article III forum, since the period for timely review is likely to have expired by the time the agency acts on the reconsideration petition. Such additional procedural hoops would serve no function. Furthermore, such requirements set a trap for the unwary, who, if they are not intimately familiar with the intricacies of the finality doctrine, may inadvertently lose their right to judicial review.

The court also noted that forcing parties immediately into court could lead to judicial waste, because "when the party elects to seek a rehearing there is always a possibility that the order complained of will be modified in a way which renders judicial review unnecessary." *Id.* at 227. The Supreme Court thus interpreted section 704 against its literal meaning because to do

otherwise would create a crabbed, potentially unfair, and possibly inefficient result.

When, as in this case, a party decides to request simultaneous review from both the agency and the court of appeals within the appropriate time frame, there is no problem of a party inadvertently losing its right to appeal. Thus some of the reasons that motivated the decision in *Locomotive Engineers* do not apply to the case at bar. On the other hand, concern for judicial efficiency still applies. In this case permitting simultaneous jurisdiction raises the possibility that a court of appeals will expend extensive judicial time on a case only to have agency reconsideration nullify its efforts, *see Outland*, 284 F.2d at 227. Moreover, the legislative history of section 704 suggests that Congress enacted the provision only to make clear that there was no requirement that a party seek administrative rehearing as a prerequisite to judicial review. There is no evidence that Congress intended to alter the prior practice that the pendency of a reconsideration petition was jurisdiction defeating. *See* Comment, *"Final" Orders: Section 10(c) of the APA,* 6 Stanford L.Rev. 531 (1954); *see, e.g., Southland Industries v. FCC,* 99 F.2d 117, 120 (D.C.Cir.1938) (exemplifying the prior practice).

Given these considerations, the critical question becomes whether the rule of *Locomotive Engineers* can be cabined so as not to be applied to this case. In analytic terms, the question is whether we can hold that an agency decision is nonfinal for purposes of the timing of a Petition for Review but final in terms of conferring jurisdiction upon the appellate court. We believe, however, that there is no principled way to distinguish between the concept of finality for purposes of triggering the running of a time limit for appeals and the concept of finality for the purpose of appellate court jurisdiction. The reason that the

---

year, however, the Ninth Circuit reversed itself and adopted the *Outland* rule. *See Samuel B. Franklin & Co. v. SEC,* 290 F.2d 719 (9th Cir. 1961).

**5.** In *Locomotive Engineers,* the Court was actually construing the Interstate Commerce Act,

rather than the APA. However, the Court based its argument on an analogy to section 704, the portion of the APA that we are now construing, finding "no basis for distinguishing" the two statutes. 107 S.Ct. at 2369.

time limit for appeal begins to run when a final judgment is entered is precisely that once the final judgment is entered the petitioner has the opportunity to bring its case to the Court of Appeals.

In policy terms the question is whether the obvious potential for duplication or wasted effort is outweighed by countervailing considerations. We know of none. However, we test our conclusions against the best arguments that we can construct for the contrary position. We are left to our own devices in this regard since the submissions of the parties on jurisdiction were essentially conclusory.

### III.

First, it can be argued that one of the policy justifications for the result in *Locomotive Engineers*—the desire to avoid a de facto requirement of protective appeals—does not apply to the situation of simultaneous jurisdiction; consequently "finality" need not be defined the same way in the case at bar. Second, it can be argued that one cannot discern whether an agency action is "final" in this area of the law simply by noting that the same agency action has been characterized as "final" for another purpose. It is well established, for example, that when two parties are adversely affected by an agency's action, one can petition for reconsideration before the agency at the same time that the other seeks judicial redetermination. *See American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 541, 90 S.Ct. 1288, 1293, 25 L.Ed.2d 547 (1970). This scheme arguably renders a single determination by the agency nonfinal for purposes of timely review with respect to the petitioning party but final with respect to the party who went straight to court.

In the end, however, we find these counterarguments to be unpersuasive. Even though the policy reasons may vary based on the context in which we are defining finality, there is still incoherence in defining the term differently for triggering time limits for review and for purposes of making an action reviewable. *See supra.* Furthermore, as we have explained, the Supreme Court in *Locomotive Engineers* stated that section 704 was only designed to get rid of the requirement that parties petition for reconsideration before getting judicial review, 107 S.Ct. at 2369, and it does not alter the prior practice which held that a timely filed reconsideration petition was a bar to judicial jurisdiction. *See, e.g., Southland Industries, Inc. v. FCC, supra.*

Second, we do not conclude from the fact that one action can be final for one party and yet nonfinal for another to mean that "finality" is an analytically indefinite term in this context. On the contrary, we think that all it means is that finality with respect to agency action is a party-based concept—a reading of finality which, as discussed below, serves the interests of fairness by allowing parties seeking judicial review to get it, rather than making them dependent on the whims of other parties. *See infra* p. 587–88. This fact about agency finality does not provide a reason for creating an analytic inconsistency between this case and *Locomotive Engineers.*

Turning to the policy aspect of these distinctions, we also note that the rule that filing a petition for reconsideration renders an agency action nonfinal with respect to the filing party is good policy. Petitioners have the option of proceeding directly to the court of appeals, or giving the agency another chance to consider the matter and applying to the court of appeals afterward. We can see no justification for allowing a petitioner to apply to both the court and the agency at the same time. On the contrary, such a regime could lead only to waste of resources on the part of the agency, the court, or both, without any countervailing benefit. *Cf. Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982) (holding that a notice of appeal is a "nullity" if filed while there is a pending motion before the district court asking the district court to alter or amend its judgment). The fact that, as discussed above, some waste of resources is tolerated when one party seeks administrative reconsideration and another seeks judicial review is not a rea-

son for countenancing waste in the situation we face here.

A single agency action can affect a large number of parties. In getting rid of the requirement that parties ask for agency reconsideration before going to court, Congress evinced a desire to allow parties who so desire to get speedy judicial relief. If any party could render an action nonfinal for all, simply by filing a petition for reconsideration, this purpose would be thwarted; parties seeking immediate judicial relief would be forced to wait until the agency disposed of the reconsideration petitions filed by others. Thus as a matter of furthering Congress' intent not to require such extensive exhaustion, while at the same time allowing parties seeking agency reconsideration to do so, the Supreme Court has concluded that an agency action can be final for one party and nonfinal for another. *See American Farm Lines,* 397 U.S. at 541, 90 S.Ct. at 1293.

However, this reasoning does not apply to cases, like the case at bar, in which the party in court is the party who petitioned for agency reconsideration. In such cases no one has forced such party to remain at the agency level; the party itself has opted to do so. The reasons for countenancing waste of judicial resources when there are two parties seeking review, one with the agency and one with the court, do not apply when only a single party is involved. *See Winter v. ICC,* 851 F.2d 1056, 1062 (8th Cir.1988).

Under different circumstances it might have been appropriate to conclude that Congress has made a policy judgment that efficiency is always secondary in the context of judicial review of agency actions. However, the legislative history reflects no such judgment, and *Locomotive Engineers* undermines the plain meaning rationale.

## IV.

It is always disturbing for a court to go against the "plain meaning" of a statute. It is particularly troubling when, as is the case here, other courts have found a way to enforce the language. We must thus come to grips with Judge Scalia's opinion in *American Trucking Associations, Inc. v. ICC,* 697 F.2d 1146, 1148 n. * (D.C.Cir. 1983), which was followed by the Seventh Circuit in *Northside Sanitary Landfill, Inc. v. Thomas,* 804 F.2d 371, 378 (7th Cir.1986). As mentioned above, these cases held that the pendency of a petition for agency reconsideration has no effect on a court's jurisdiction. We do note that, in the only opinion on the issue written after *Locomotive Engineers,* the Court of Appeals for the Eighth Circuit, decided that such simultaneous jurisdiction is impermissible. *See Winter v. ICC,* 851 F.2d 1056, 1062 (8th Cir.1988).

We have considered the opinions of our sister circuits, but we remain convinced that we have no jurisdiction to consider this petition while there is an outstanding petition for agency reconsideration. Neither of the Courts of Appeals that decided the other way provides any basis for distinguishing this case from *Locomotive Engineers.* Although *Outland v. CAB*—the case which articulated the rule that Justice Scalia adopted for the Supreme Court in *Locomotive Engineers*—was binding precedent in the D.C. Circuit at the time Judge Scalia wrote *American Trucking,* he makes no attempt in *American Trucking* to reconcile his interpretation of section 704 with the prior contrary interpretation in his circuit. The Seventh Circuit had no prior binding precedent interpreting section 704 against its plain meaning and thus did not need to grapple with the problem of reconciling two conflicting meanings of "finality." However, their uncritical reliance on plain meaning is no longer persuasive in light of the Supreme Court's interpretation of section 704 in *Locomotive Engineers.*

In sum we find that the courts of appeals cannot have jurisdiction over a petition for review when a petition for reconsideration brought by the same party is still pending before the agency. Finality for purposes of entitlement to judicial review should mean the same thing that finality means for purposes of triggering the time limit for appeal. Thus we find ourselves bound by *Locomotive Engineers,* which interpreted section 704, notwithstanding its literal

meaning, as allowing petitions for reconsideration to render agency actions nonfinal.

### V.

We regret that this jurisdictional issue has arisen so late in the day. Not only do we wish that the parties had brought the existence of the petition for reconsideration clearly to our attention early on, but we also are at a loss to understand why the petition for rehearing has remained undisposed of for some eighteen months after issuance of the final rule, particularly in view of its consequence for appellate review. We urge the agency to dispose of it promptly. However, because we do not have jurisdiction to decide a case while a petition for reconsideration on the same case is pending before the EPA, the petition for review will be dismissed.

If West Penn's petition for reconsideration is withdrawn, or if the EPA denies it, we will have jurisdiction to review the Administrator's refusal to declare Armstrong County an attainment area. West Penn may then file a new petition for review. If it does, the case will proceed on original briefs and letter memoranda thus far received by the panel, supplemented by such additional submissions as may be appropriate.