Olison PIERRE, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 90–4791
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 3, 1991.

Olison Pierre, pro se.

Edwin Meese, III, Atty. Gen., Dept. of Justice, David M. McConnell, David J. Kline, Robert L. Bombough, Director, Office of Immigration Litigation, Civ. Div., Dept. of Justice, Washington, D.C., for I.N.S.

B.Z. Caplinger, District Director, I.N.S., New Orleans, La., Omer G. Sewell, District Director, Harlingen, Tex., for other interested parties.

Before JOLLY, HIGGINBOTHAM, and JONES, Circuit Judges.

PER CURIAM:

Olison Pierre appeals both a final deportation order and an order denying his petition for rehearing. We find that the deportation order properly states the relevant legal standards, and that it is supported by substantial evidence, and affirm.

I.

Olison Pierre is a native and citizen of Haiti. In April of 1980, Pierre entered the United States near Miami, Florida. The Immigration and Naturalization Service immediately apprehended Pierre and subsequently paroled him into the country. Pierre resided in Florida from 1980 until 1986.

On October 2, 1986, pursuant to a guilty plea, a Florida court convicted Pierre on two counts of the sale of cocaine, one count of possession of cocaine with intent to sell, and one count of possession of cocaine. In exchange for the plea, Pierre received a two year sentence. Four days later, on October 6, 1986, the I.N.S. commenced deportation proceedings with the issuance of an order to show cause. The order charged Pierre with deportability as an alien entering the United States without inspection. 8 U.S.C. § 1251(a)(2). During the subsequent deportation proceedings, the I.N.S. also charged Pierre with deportability as an alien convicted of a crime involving a controlled substance. 8 U.S.C. § 1251(a)(11).

The immigration judge initially found Pierre deportable as charged, but on appeal, the Board of Immigration Appeals remanded for a full evidentiary hearing on both the deportability issue and Pierre's request for asylum. The hearing commenced on January 20, 1989, and the immigration judge continued the proceedings to allow Pierre to obtain counsel. The hearing resumed on February 3, 1989. Pierre had still not obtained counsel, and the immigration judge continued the proceedings again when Pierre testified that he never received the charging documents.

The hearing resumed for a third time on February 10, 1989; Pierre had still not

obtained counsel. During the proceedings, Pierre acknowledged his Florida conviction but contended that he was actually innocent of the underlying crimes. The judge found that Pierre was subject to deportation under § 1251(a)(11) and explained to him the proof and procedures necessary to establish eligibility for asylum in the United States. He then continued the proceedings to allow Pierre to prepare an application.

Pierre subsequently filed an asylum application, stating that he feared persecution in Haiti because his father and brother had been killed by Haitian authorities in 1986. At the hearing, however, which began again on June 8, 1989, Pierre testified that a group of private citizens, called "Uproot," killed his father for refusing to give them money and killed his brother for investigating his father's death.

The immigration judge found Pierre "evasive and confusing" and his story incredible. He also noted that, even if the story was true, the deaths of Pierre's brother and father were not "on account of race, religion, nationality, membership in a particular social group, or political opinion" but instead the result of a criminal element in Haiti. *See* 8 U.S.C. § 1101(a)(42)(A). Finally, the immigration judge stated that, even if Pierre had presented sufficient evidence in support of his asylum application, he would nevertheless deny asylum as a matter of discretion because of the serious nature of Pierre's Florida conviction.

Pierre again appealed to the Board of Immigration Appeals, and again changed his story. This time, he claimed that "his father and brother was [sic] killed by a group of religious cult (Voodoo cult) that had been menacing and harassing his family members and relatives." He further stated that he had been hesitant to disclose this true story to the immigration judge because he feared retaliation by the cult. Pierre also challenged his confinement in a deportation center without bond.

The Board affirmed the order of the immigration judge on all grounds on February 14, 1990. Like the immigration judge, the Board concluded that Pierre was statu-

torily ineligible for the withholding of deportation because of the Florida conviction, that he had not demonstrated a well-founded fear of persecution, and that his case did not warrant asylum in the exercise of discretion. The Board also refused to entertain Pierre's complaint related to custody and bond, as the issue fell "outside the scope of the appeal." 8 C.F.R. § 242.2(d).

Pierre subsequently filed a petition for rehearing with the Board, but the Board denied the motion on June 27, 1990, reasoning that Pierre had failed to state new and material facts in support of the motion as required by 8 C.F.R. § 3.8. Pierre filed a notice of appeal with this court on October 22, 1990. In his brief to this court, Pierre raises issues related to both the final deportation order and the order denying his petition for rehearing.

## II.

■ At the outset, we must confront a jurisdictional issue that has been a source of some disagreement among the federal circuit courts. Pursuant to 8 U.S.C. § 1105a(a)(1), a petition for review of a final deportation order "may be filed not later than six months from the date of the final deportation order." In this case, Pierre filed his notice of appeal within four months of the order denying the petition for rehearing but more than eight months after the original deportation order became final. The order denying the petition for rehearing was a final order within the meaning of § 1105a; thus, this court has jurisdiction to review the Board's denial of the petition. *Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964). But the underlying final deportation order stands on different jurisdictional footing.

■ In *Hyun Joon Chung v. I.N.S.*, 720 F.2d 1471 (9th Cir.1984), the Ninth Circuit held that

> when [a motion to reconsider] is denied, or when reconsideration still produces an adverse result, the alien has six months from the date of the order disposing of the motion within which to file an appeal to this court; and both the order dispos-

ing of the motion to reconsider and the original order are reviewable.

*Accord Bregman v. I.N.S.*, 351 F.2d 401, 402–03 (9th Cir.1965) (motion to reopen). The Third Circuit expressly rejected *Hyun Joon Chung* and *Bregman* in *Nocon v. I.N.S.*, 789 F.2d 1028 (3d Cir.1986). "For our court to entertain jurisdiction of either of these final orders, a petition for review must be filed within six months *of the specific order* sought to be reviewed, in compliance with 8 U.S.C. § 1105a(a)(1)." *Id.* at 1033. The departure from the Ninth Circuit was clearly motivated by a concern that aliens might use successive, piecemeal appeals as "a dilatory tactic to postpone the execution of deportation orders." *Id.*

The D.C. Circuit took a third approach in *Attoh v. Immigration and Naturalization Service*, 606 F.2d 1273 (D.C.Cir.1979). Like the Third Circuit, the D.C. Circuit recognized that *Bregman* could result in successive, frivolous motions to reconsider or reopen. The court thus adopted *Bregman* "only insofar as it implicitly recognizes that intervening good faith petitions for administrative relief may toll or suspend the running of the time limit." *Id.* at 1276 n. 15.

We are persuaded by the D.C. Circuit's course in *Attoh*. This approach best merges the traditional understanding of a "final order" with the special concerns that arise in the context of deportation orders. *See Arch Mineral Corp. v. Office Workers' Comp.*, 798 F.2d 215, 218–19 (7th Cir.1986) (reviewing administrative cases generally and concluding that, under the majority view, the filing of a motion for reconsideration suspends the time for filing a petition for review). This court thus has jurisdiction to review both the final deportation order and the order denying the petition for rehearing.

### III.

#### A. *The final deportation order.*

█ In reviewing the deportation order, the Board of Immigration Appeals considered only the merits of the asylum application. Indeed, aside from the custody and bond issue, "fear of persecution" was the

only issue raised by Pierre. Pierre's current challenges to the final deportation order, by contrast, are all procedural. Specifically, he contends that the interpreters at the deportation proceeding were inadequate, in violation of his right to due process, that the immigration judge erred in denying his motion to change venue, and that he was prejudiced by lack of counsel. He also claims that he has been held in a detention center for 28 months without bond.

Because Pierre did not raise these procedural issues below, we are without jurisdiction to consider them on appeal. Pursuant to 8 U.S.C. § 1105a(c), "[a]n order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations."

#### B. *The petition for rehearing.*

The Board of Immigration Appeals construed Pierre's petition for rehearing as a motion to reopen and denied the motion on procedural grounds. Specifically, the Board stated that Pierre had not complied with the requirements of 8 C.F.R. § 3.8 because he had not alleged any new facts or presented any new evidence in support of his claim of persecution. The I.N.S. takes the same position on appeal, citing *I.N.S. v. Abudu*, 485 U.S. 94, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988).

Both the Board and the I.N.S. fail to fully recognize the distinction between a motion to reopen and a motion to reconsider. The two are "separate and distinct motions with different requirements;" and, in this case, the distinction is important. *Sanchez v. I.N.S.*, 707 F.2d 1523, 1529 (D.C.Cir.1983); *see also Dawood–Haio v, I.N.S.*, 800 F.2d 90, 97 (6th Cir.1986); *Saldana v. I.N.S.*, 762 F.2d 824, 826 (9th Cir. 1985). A motion to reopen must "state the new facts to be proved at the reopened hearings and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 3.8. A motion to reconsider, on the other hand, must "state the reasons

upon which the motion is based and shall be supported by such precedent decisions as are pertinent." *Id.*

■ Pierre labeled his petition as a "petition for rehearing." It contains some elements of a motion to reopen. For example, he claimed that the person helping him with his asylum application "did not have the proper knowledge" and stated that he would like to submit a new asylum application. But the petition also sounds of a motion to reconsider. Pierre suggested that "a review of the transcript of the proceedings ... would reveal where the petitioner had stated his genuine fear of persecution." To the extent that the petition reads as a motion to reconsider, the Board erred in dismissing it for failure to state new facts and present new evidence.

■ However, we affirm the denial of the order because we find no merit in the petition. Pierre has never identified any legal error in either the immigration judge's decision or the Board's earlier decision, nor has he demonstrated a change in the law. In sum, then, the Board's decision affirming the deportation order properly states the relevant legal standards, and there is substantial evidence in support of the Board's conclusion. *Compare Sanchez*, 707 F.2d at 1529.

AFFIRMED.