Agustin RHOA–ZAMORA, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Felipe Antonio JURESMA–ALTAMI-
RANO and Luis Rodriguez–Alta-
mirano, Petitioners,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Luis Andres ESQUIVEL–
BERRIOS, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Nos. 91–1949, 91–1513 and 91–1551.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 1992.

Decided Aug. 4, 1992.

As Modified on Denial of Rehearing
and Rehearing En Banc Nov. 4, 1992.

Elpidio Villarreal, Jill A. Thompson (argued), Sonnenschein, Nath & Rosenthal, Chicago, Ill., for petitioner Agustin Rhoa–Zamora.

Lori L. Scialabba, David J. Kline, Charles E. Pazar, Robert Kendall, Jr., Donald E. Keener (argued), Dept. of Justice, Office of Immigration Litigation, Robert L. Bombaugh, I.N.S., Civ. Div., Washington, D.C., Richard L. Thornburg, U.S. Atty. Gen., Office of U.S. Atty. Gen., Washington, D.C., A.D. Moyer, Samuel Der–Yeghiayan, Ellen J. Krupp, I.N.S., Fred Foreman, U.S. Atty., Crim. Div., Chicago, Ill., for I.N.S.

James T. Barry, III (argued), Foley & Lardner, Milwaukee, Wis., Randall S. Rapp, Foley & Lardner, Chicago, Ill., for petitioners Felipe Juaresma–Altamirano and Louis Rodriguez–Altamirano.

Roy A. Petty, Midwest Immigrant Rights Center, Travelers and Immigrants Aid, Javier H. Rubinstein (argued), Mayer, Brown & Platt, Chicago, Ill., for petitioner Luis A. Esquibel–Berrios.

Before CUDAHY and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

CUDAHY, Circuit Judge.

The petitioners in these consolidated appeals are Nicaraguan nationals who fled Nicaragua while the Sandinistas were in

power and subsequently sought asylum in this country. All four petitioners were denied asylum by an Immigration Judge and appealed to the Board of Immigration Appeals (the Board). In each case, the Board took administrative notice that, as of April 1990, "the Sandinista party no longer controls the Nicaraguan government" and concluded that, "under the present circumstances," the record did not support a finding that the petitioner had "a well-founded fear of persecution by the Sandinista government were he to return to Nicaragua." Petitioners claim that the Board erred in finding that they did not have a well-founded fear of persecution because of the change in the Nicaraguan government. They also contend that the Board violated their rights to due process by failing to accord each petitioner an individualized determination of his claim. In addition, petitioner Zamora argues that the Board deprived him of due process by failing to give him an opportunity to rebut the noticed facts. Petitioners therefore ask this court either to reverse the Board's decisions or to grant their motions to adduce additional evidence under 28 U.S.C. § 2347(c) and "remand these proceedings to the [Board] for further consideration" in light of that evidence.

## I. FACTS

### A. *Agustin Rhoa–Zamora*

■ Agustin Rhoa–Zamora entered the United States illegally on December 24, 1986. He was apprehended by the Immigration and Naturalization Service (INS) and charged with deportability under 8 U.S.C. § 1251(a)(2). Zamora conceded deportability, but requested asylum pursuant to 8 U.S.C. § 1158(a) and withholding of deportation pursuant to 8 U.S.C. § 1253(h). To be eligible for asylum, an alien must establish that he meets the statutory definition of "refugee," which requires him to show either past persecution or a "well-founded fear" of future persecution on account of race, religion, nationality, membership in a particular social group or polit-

ical opinion. 8 U.S.C. § 1101(a)(42)(A). The decision whether to grant asylum to a statutorily eligible alien is within the discretion of the Attorney General. *INS v. Stevic,* 467 U.S. 407, 423 n. 18, 104 S.Ct. 2489, 2497 n. 18, 81 L.Ed.2d 321 (1984). Withholding of deportation, by contrast, is mandatory if the applicant can meet the higher standard of showing a "clear probability" of persecution on account of one of these five grounds if he were returned to his country. *Id.* at 421 n. 15, 104 S.Ct. at 2496 n. 15.

At his deportation hearing, Zamora testified that he fled Nicaragua because of religious persecution directed at him and his family. He claimed that he was an adherent of the Charismatic Catholic revival movement and described numerous incidents of Sandinista violence against him and other members of his faith. The Immigration Judge rejected Zamora's testimony as neither "candid" nor "credible" and concluded that Zamora had established neither a "clear probability that he would be subject to persecution upon return to Nicaragua" nor a well-founded, subjective fear of persecution. The judge therefore denied his application for asylum and ordered him to depart the country within two months.

Zamora appealed to the Board. While the appeal was pending, national elections were held in Nicaragua and a new coalition government made up of parties opposed to the Sandinistas was voted into office. On January 31, 1991, the Board issued a written opinion dismissing Zamora's appeal. Without prior notice to Zamora, the Board took administrative notice of the change in government in Nicaragua and concluded that, since the Sandinista party no longer governs Nicaragua, Zamora did not have a well-founded fear of persecution by the Sandinista government should he return. The Board ordered Zamora to depart within thirty days.

On April 25, 1991, Zamora filed with the Board a motion to reopen the proceeding pursuant to 8 C.F.R. § 3.2.[1] In support of his motion, Zamora submitted various materials allegedly evincing the Sandinistas'

---

1. Zamora describes this motion as a "motion to reconsider." 8 C.F.R. § 3.2 provides for both motions to reconsider and motions to reopen.

continuing ability to persecute him. The Board has not, to this date, ruled on the motion. On April 26, 1991, Zamora filed a petition for review of the Board's order in this court. The Board certified the administrative record and relinquished it to this court for purposes of that appeal.

### B. *Luis Esquivel–Berrios*

Luis Esquivel–Berrios fled Nicaragua in February of 1985 at the age of thirteen. He went first to Honduras and then to Guatemala, where he remained for three and one-half years before entering the United States in July of 1988. On July 21, 1988, Berrios was arrested by the INS and charged with deportability. Like Zamora, Berrios conceded deportability but sought either asylum or withholding of deportation.

At his hearing, Berrios testified that he had left Nicaragua because he feared being forcibly conscripted into military service by the Sandinista government. He testified that in February of 1985 it was common in his village for twelve- and thirteen-year-old boys to be taken into military service, and that he personally knew of other twelve- and thirteen-year-old boys who had been kidnapped and conscripted. Berrios also testified that he was politically opposed to the Sandinista government, and that he remains a conscientious objector to any form of military service in light of his firmly-held religious and moral beliefs. He testified that he believed that if he were returned to Nicaragua he would be either shot or jailed by the Sandinista government because of his decision to avoid conscription.

The Immigration Judge found that Berrios' testimony was credible, but nonetheless concluded that Berrios had not met his burden of showing that he was eligible for asylum or withholding of deportation. The judge noted that the Board of Immigration Appeals has long adhered to the position that "it is not persecution for a country to require military service of its citizens." Although there are exceptions to this rule, the judge concluded that this case did not fit within any such exception. He found no objective evidence of record that Nicaragua recruits twelve- or thirteen-year-olds into military service. Further, the judge noted that Berrios could certainly be required to serve in the Nicaraguan military if returned there at present, and could be convicted of a crime and jailed if he refused to do so. Finally, the judge found no objective evidence that Berrios would receive disproportionate treatment for his previous decision to avoid conscription. The Immigration Judge therefore denied Berrios' application for asylum or withholding of deportation and ordered that he be deported. The Board affirmed this decision based on the April 1990 change of government in Nicaragua, again without prior notice to the petitioner. Berrios did not file a motion to reopen or reconsider but appealed directly to this court.

### C. *Felipe Antonio Juresma–Altamirano and Luis Rodriguez–Altamirano*

Half-brothers Felipe Antonio Juresma–Altamirano and Luis Rodriguez–Altamirano (the Altamiranos or the Altamirano brothers) entered the United States illegally on October 26, 1983. They were arrested by INS officials four days later and charged with deportability. Like the other petitioners in this case, the Altamiranos conceded deportability but sought asylum and withholding of deportation.

The Altamiranos testified before the Immigration Judge that they fled Nicaragua in order to avoid recruitment into the Sandinista army. They testified that they are

---

8 C.F.R. § 3.8 prescribes the form for each type of motion as follows:

> Motions to reopen shall state the new facts to be proved at the reopened hearing and shall be supported by affidavits or other evidentiary material. Motions to reconsider shall state the reasons upon which the motion is based and shall be supported by such precedent decisions as are pertinent.

We think it clear that Zamora's motion is more accurately characterized as a motion to reopen than as a motion to reconsider, and we will therefore treat it as such throughout this opinion.

In a filing with this court dated October 26, 1992, Zamora's counsel has provided a decision

Pentecostal Christians, as are the other members of their family, and that the Pentecostal religion forbids its members to participate in any service requiring the carrying of arms.[2] The brothers also described various threats of persecution made against them for adhering to their religious convictions, including statements by military authorities that they would be imprisoned for at least five years if they refused to serve in the military.

The Immigration Judge accepted the brothers' testimony, but found that they had not established a well-founded fear of persecution based on their religious beliefs because they offered no evidence that they had ever requested exemption from military service based on those beliefs.[3] The judge also noted that the brothers did not claim religious persecution, in general, by the Sandinistas. The judge concluded that the brothers had failed to establish that they would be singled out or systematically persecuted because of their religious beliefs. He therefore denied their applications for asylum or withholding of deportation and granted voluntary departure. The Board affirmed this decision based on the intervening change of government in Nicaragua, without prior notice to the Altamiranos, and ordered the brothers to depart within thirty days. The Altamiranos did not file a motion to reopen or reconsider but appealed directly to this court.

## II. ANALYSIS

### A. *Agustin Rhoa–Zamora*

#### 1. *Jurisdiction*

■ The INS argues that this court has no jurisdiction over Zamora's petition because his motion to reopen is still pending before the Board, so that he has failed to exhaust his administrative remedies as required by 8 U.S.C. § 1105a(c). In support of this position, the INS cites the Sixth Circuit's decision in *Dokic v. INS*, 899 F.2d 530 (6th Cir.1990). In *Dokic*, the court held that an applicant for asylum cannot obtain judicial review of an order of deportation until he has exhausted his administrative remedies "by filing a motion to reopen." *Id.* at 532. Presumably, this rule would also require the petitioner to wait until the motion was denied before seeking appellate review of the Board's order.

■ We disagree with the Sixth Circuit's interpretation of the exhaustion requirement. Section 1105a(c) provides:

> An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him *as of right* under the immigration laws and regulations....

(emphasis added). As Zamora points out, reopening is a discretionary remedy, not one available as of right. *INS v. John Ha Wang*, 450 U.S. 139, 143, 101 S.Ct. 1027, 1030, 67 L.Ed.2d 123 (1981); Note, *Timeliness of Petitions for Judicial Review Under Section 106(a) of the Immigration and Nationality Act*, 86 Mich.L.Rev. 990, 1011 (1988). Further, it would be a waste of time and administrative resources to require petitioners to file a motion to reopen in those cases, such as *Dokic* itself, in which they do not claim to have any new evidence, but wish to challenge the Board's decision on the existing administrative record. Such a rule is therefore contrary to the strong policy interest in preventing the use of frivolous motions to reconsider or reopen in order to postpone the execution

by the Board, dated September 23, 1992, about two pages in length, denying Zamora's motion.

2. Although it is not relevant to our decision here, we note that the Supreme Court has recently cast considerable doubt on whether these allegations, even if true, can support a well-founded fear of persecution on account of religion. In *INS v. Elias–Zacarias*, —— U.S. ——, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), the Court held that a guerrilla organization's attempt to conscript the asylum applicant into its military forces does not necessarily constitute persecution on account of political opinion. Based on that decision, the Court vacated and remanded

the Ninth Circuit's decision in *Canas–Segovia v. INS*, 902 F.2d 717 (9th Cir.1990), which held, *inter alia*, that petitioners who would be imprisoned in their native country for refusing to serve in the military based on their religious beliefs had established a "clear probability of persecution on account of religious beliefs." 902 F.2d at 717, vacated and remanded, *INS v. Canas–Segovia*, —— U.S. ——, 112 S.Ct. 1152, 117 L.Ed.2d 401 (1992).

3. In fact, Luis testified that he had served in the Nicaraguan army in 1980 and 1981, although he had been a Pentecostal Christian all of his life.

of deportation orders. *Pierre v. INS*, 932 F.2d 418, 421 (5th Cir.1991); Note, *supra*, at 1012–13. This court has routinely reviewed Board decisions ordering deportation in cases where the petitioner did not file a motion to reopen. *See, e.g., Zulbeari v. INS*, 963 F.2d 999 (7th Cir.1992); *Osaghae v. INS*, 942 F.2d 1160 (7th Cir.1991); *Kaczmarczyk v. INS*, 933 F.2d 588 (7th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991). We see no reason to change that approach.

We are more concerned, however, with another jurisdictional issue that Zamora's pending motion to reopen creates. The Ninth and Eleventh Circuits hold that a motion to reopen deportation proceedings following the Board's affirmance of an immigration judge's deportation order renders the Board's decision nonfinal, and therefore non-appealable. *Fleary v. INS*, 950 F.2d 711 (11th Cir.1992); *Chu v. INS*, 875 F.2d 777 (9th Cir.1989); *Hyun Joon Chung v. INS*, 720 F.2d 1471, 1474 (9th Cir.1983), *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2659, 81 L.Ed.2d 366 (1984). The Third Circuit, on the other hand, holds that a pending motion to reopen "does not render the order of deportation nonfinal." *Alleyne v. INS*, 879 F.2d 1177, 1181 (3d Cir. 1989).

■ In administrative law generally, there appears to be a strong presumption that, with respect to judicial review, the filing of a motion to reopen or reconsider renders an agency's decision nonfinal for purposes of determining when the time to appeal begins to run. *Interstate Commerce Comm'n v. Locomotive Engineers*, 482 U.S. 270, 284–85, 107 S.Ct. 2360, 2369, 96 L.Ed.2d 222 (1987); *Arch Mineral Corp. v. Director, Office of Workers' Compensation Programs*, 798 F.2d 215, 218 (7th Cir. 1986). The majority of courts follow this approach despite the Administrative Proce-

dure Act's provision that agency action that is "otherwise final" is final for purposes of review "whether or not" a motion for reopening or reconsideration has been filed. 5 U.S.C. § 704. As the Supreme Court has noted, this provision "has long been construed … merely to relieve parties from the *requirement* of petitioning for rehearing before seeking judicial review … but not to prevent petitions for reconsideration that are actually filed from rendering the orders under reconsideration nonfinal." *Locomotive Engineers*, 482 U.S. at 284–85, 107 S.Ct. at 2369 (emphasis in original).[4] In *Locomotive Engineers*, the Court placed its imprimatur on this interpretation. *Id.*

In the wake of *Locomotive Engineers*, several circuits have taken the next logical step of holding that if the filing of a motion to reopen renders an agency decision nonfinal for purposes of determining the time for appeal, it must also render that decision nonfinal for purposes of appellate jurisdiction. *See United Transp. Union v. Interstate Commerce Comm'n*, 871 F.2d 1114 (D.C.Cir.1989); *West Penn Power Co. v. Environmental Protection Agency*, 860 F.2d 581 (3d Cir.1988); *Winter v. Interstate Commerce Comm'n*, 851 F.2d 1056, 1062 (8th Cir.), *cert. denied,* 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988).[5] In *Chu v. INS*, the Ninth Circuit applied this rule in the context of deportation proceedings, concluding that there was "no principled basis upon which to distinguish Chu's case from *Locomotive Engineers* and its progeny." 875 F.2d at 781.

We disagree with the Ninth Circuit's conclusion. In *West Penn Power*, the Third Circuit began its analysis of the effect of a motion to reopen on an order of the EPA by observing that "[i]t makes sense to define 'finality' under the Clean Air Act in the same way that it is defined in adminis-

---

4. The legislative history of section 704 supports this interpretation. *See West Penn Power Co. v. Environmental Protection Agency*, 860 F.2d 581, 585 (3d Cir.1988).

5. In *Northside Sanitary Landfill, Inc. v. Thomas*, 804 F.2d 371 (7th Cir.1986), this court held that the pendency of a motion to reopen or reconsider has no effect on an appellate court's jurisdiction. *Id.* at 378. That holding relied explicitly on the opinion of then-Judge Scalia in *American Trucking Ass'n. Inc. v. Interstate Commerce*

*Comm'n,* 697 F.2d 1146, 1148 n. * (D.C.Cir. 1983). The Supreme Court's decision in *Locomotive Engineers*, however, casts serious doubt on the continuing viability of *American Trucking* and its progeny. *West Penn Power*, 860 F.2d at 587. But we need not resolve this issue here, given our conclusion that the rule of *Locomotive Engineers* does not apply in the immigration context, whatever its effect on administrative law generally.

trative law generally." 860 F.2d at 584. It does not necessarily make sense, however, to define "finality" under the INA in the same way it is defined in administrative law generally. In fact, there are good reasons not to apply the *Locomotive Engineers* rule to deportation proceedings. That rule "basically rest[s] on a notion of judicial economy." *Arch Mineral Corp.*, 798 F.2d at 219. "It is obviously wasteful of the resources of the courts to burden them with objections to administrative action which may be obviated by agency action on reconsideration." *Id.; see also West Penn Power*, 860 F.2d at 585 ("allowing a petitioner to apply to both the court and the agency at the same time[ ] ... could only lead to waste of resources on the part of the agency, the court, or both, without any countervailing benefit").

■ In the immigration context, however, efficient use of judicial resources is secondary to a different goal: preventing the use of "dilatory tactic[s] to postpone the execution of deportation orders." *Alleyne*, 879 F.2d at 1180; *see also Berroteran–Melendez v. INS*, 955 F.2d 1251, 1255 (9th Cir.1992) (electing to exercise jurisdiction over appeal where petitioner filed motion to reopen *after* seeking appellate review, on ground that "the potential for abuse of the process to circumvent the BIA's discretionary power to grant or deny a stay of deportation pending a motion to reopen outweighs concerns with efficiency"). Application of the *Locomotive Engineers* rule on finality would "directly contravene" that goal. *Alleyne*, 879 F.2d at 1180. Under the INA, deportation is available only "[w]hen a *final order* of deportation under administrative processes is made against any alien." 8 U.S.C. § 1252(c) (em-

phasis added). Thus, if the filing of a motion to reopen or reconsider destroyed the finality of the Board's order, that motion might delay deportation so long as it was pending.[6] Moreover, under the Ninth Circuit's scheme an alien who filed such a motion within the statutory period for appeal could further delay deportation if the motion was denied by petitioning for judicial review both of the Board's initial order and of the denial of the motion, thereby obtaining an automatic stay of deportation. 8 U.S.C. § 1105a(a)(3). Such a result is clearly contrary to Congress' intent in enacting the INA.[7]

Finally, we note that the INS regulations providing for motions to reopen or reconsider do not seem to contemplate such a result. Rather, the regulations appear to assume that such motions may be pending at the same time the Board's order is being appealed:

> Motions to reopen or reconsider shall state whether the validity of the order has been *or is* the subject of any judicial proceeding.

8 C.F.R. § 103.5a (emphasis added). We conclude that the pendency of a motion to reopen or reconsider an order of deportation does not render the order nonfinal for purposes of this court's jurisdiction. We have jurisdiction over Zamora's case.

### 2. *Due Process*

■ Zamora contends that the Board deprived him of due process by failing to accord him a sufficiently individualized determination of his claims. Zamora is certainly correct that the Board is required to "engage in a careful, individualized review of the evidence presented in [his] application[ ] and hearing[ ]." *Kaczmarczyk*, 933 F.2d at 595. Further, we agree with Zamo-

---

6. Such a result would also seem to conflict with INS regulations, which provide that "[t]he filing of a motion to reopen or a motion to reconsider shall not serve to stay the execution of any decisions made in the case." 8 C.F.R. § 3.8(a) (1988).

7. In 1990, Congress amended section 1105a by adding a provision that recognizes the availability of motions to reopen or reconsider:

> [W]henever a petitioner seeks review of an order under this section, any review sought with respect to a motion to reopen or reconsider such an order shall be consolidated with review of the order.

8 U.S.C. § 1105a(a)(6) (1990 Supp.). The Eleventh Circuit has interpreted this provision as "follow[ing] the contours of the Ninth Circuit decisions" regarding the effect of a motion to reopen or reconsider on the finality of a Board order. *Fleary*, 950 F.2d at 713. This court, however, has concluded that the Eleventh Circuit's rule is "incompatible with the plain language of" the provision. *Akrap v. INS*, 966 F.2d 267, 271 (7th Cir.1992). Thus, the 1990 amendment to the INA actually supports our decision here.

ra that the Board's disposition of these cases in three opinions employing identical, "boilerplate" paragraphs regarding the effect of the Nicaraguan election casts a cloud over the Board's decisions and hinders meaningful judicial review. We are also aware, however, that "agency action is entitled to a presumption of regularity," so that "the burden is on the petitioner[ ] to convince us that the [Board] gave short shrift to the evidence [he] presented." *Id.* The Board's written decision, which describes in some detail Zamora's testimony regarding his alleged reasons for fearing persecution, demonstrates that the Board did consider Zamora's particular evidence, at least to a degree. Although the Board apparently based its decision solely on the change of government in Nicaragua, without any examination of how that change related to Zamora's particular claims, the Board's consideration of his case was not so deficient as to constitute a denial of due process.

■ Zamora also argues that he was deprived of due process because he was not given an opportunity to rebut the Board's conclusion as to the significance of the Nicaraguan elections. This argument is without merit. In *Kaczmarczyk,* this court made clear that due process does not require the Board to give an asylum applicant the opportunity to rebut noticed facts prior to reaching a decision. Rather, we found that the mechanism of the motion to reopen, which "allows asylum petitioners an opportunity to introduce evidence rebutting officially noticed facts," provides a sufficient opportunity to be heard to satisfy the requirements of due process. *Id.* at 597. *Accord Gutierrez–Rogue v. INS,* 954 F.2d 769, 773 (D.C.Cir.1992); *Rivera–Cruz v. INS,* 948 F.2d 962, 968–69 (5th Cir.1991), *rehearing denied,* 954 F.2d 723 (1992). *But see Castillo–Villagra v. INS,* 972 F.2d 1017 (9th Cir.1992); *Ulloa v. INS,* 944 F.2d 905 (6th Cir.1991) (unpublished disposition).

*Cf. Wojcik v. INS,* 951 F.2d 172, 173 (8th Cir.1991). As discussed above, Zamora has in fact filed such a motion. The Board did not deprive Zamora of his right to due process.[8]

### 3. *Substantial Evidence*

■ Zamora also contends that the Board's decision denying him asylum was not supported by substantial evidence because, contrary to the Board's assumption, the change in government in Nicaragua did not significantly diminish the ability of the Sandinistas to persecute him. He argues that the regime headed by President Violeta Chamorro is unstable and that the Sandinistas still wield significant power. This argument rests *entirely* on evidence that Zamora submitted in support of his motion to reopen and his motion to this court for leave to adduce additional evidence. None of this evidence was before the Board at the time it made its determination in Zamora's case. We will not weigh evidence that the Board has not previously considered; an appellate court is not the appropriate forum to engage in fact-finding in the first instance. *See Osaghae,* 942 F.2d at 1162 ("we are not to take evidence and base our decision on some mixture of that evidence with the evidence that was before the Board"); *Rivera–Cruz,* 948 F.2d at 967 ("we cannot weigh evidence that has not been brought previously before the Board"); *Tejeda–Mata v. INS,* 626 F.2d 721, 726 (9th Cir.1980), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982) ("this Court does not sit as an administrative agency for the purpose of fact-finding in the first instance"). The evidence that *was* before the Board—that the Sandinistas had ceased to control the Nicaraguan government—tends to support its decision.

■ Nor will we order the Board to consider Zamora's new evidence, as he alternatively requests. In *Osaghae,* we held that "if the administrative record is inadequate because the Board has failed without

---

**8.** We do note that in order for the motion to reopen procedure to satisfy the requirements of due process it must provide a " '*meaningful* opportunity to be heard.' " *Kaczmarczyk,* 933 F.2d at 595 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976)) (emphasis added). Thus, as the D.C. Circuit recently recognized, it would raise a serious due

process problem if the Board did not actually consider these motions but simply filed them away in some obscure nook or cranny until the petitioner in question could be deported. *See Gutierrez–Rogue,* 954 F.2d at 773. So far as we can tell from this record, however, this is not such a case; the Board's delay in deciding Za-

justification to consider newly discovered evidence, we can remand for the creation of an adequate record" pursuant to 28 U.S.C. § 2347(c). 942 F.2d at 1162. Here, the fact that the Board has not yet decided Zamora's motion to reopen does not necessarily mean that the Board has "failed without justification" to consider Zamora's evidence with respect to the weakness of the Chamorro regime. A delay of more than a year in deciding a motion to reopen, while certainly significant, does not compel the conclusion that the Board has acted improperly. We can accept the INS's claim that the delay is a normal consequence of the INS's "staggering" caseload. Br. at 24. Further, we note that Zamora's petition to reopen was filed only one day before he petitioned for review in this court. Thus the Board's delay may also be attributable to a decision not to waste limited resources resolving a motion that might well be rendered moot by this court.

The *Osaghae* ruling itself is limited to situations in which the Board "has acted improperly" in preventing an asylum petitioner from placing evidence before it. 942 F.2d at 1162. By its own terms, however, section 2347 apparently permits us, as a matter of discretion, to remand to an agency for new evidence when two conditions are met: that the additional evidence is material, and that there were reasonable grounds for failure to adduce the evidence before the agency.[9] But whatever discretion we may have here we exercise in accordance with *Kaczmarczyk*, which found the reopening procedure to be an appropriate remedy for asylum petitioners seeking to rebut officially noticed facts.[10] Now that the present appeal has been resolved,

we assume that the Board will fully address Zamora's motion in a timely fashion.[11]

### B. *Luis Andres Esquivel–Berrios*

Like Zamora, petitioner Berrios argues that he was deprived of his right to due process because the Board failed to engage in sufficiently individualized consideration of his evidence. He also contends that the Board's finding that he does not have a well-founded fear of future persecution is not supported by substantial evidence for the same reason that Zamora alleges. Finally, Berrios argues that, even if the Board could reasonably conclude that he did not have a well-founded fear of future persecution, he was nonetheless entitled to asylum based on the severity of his *past* persecution.

### 1. *Due Process*

▉ Again, we note the cloud cast over the Board's decision by its use of boilerplate paragraphs in describing the salient factors involved in its determination. In addition, the Board's written decision affirming the Immigration Judge's denial of Berrios' petition does not contain the sort of detailed description of Berrios' testimony that we saw in Zamora's case. Thus, it is less immediately apparent that the Board considered Berrios' evidence at all. Nevertheless, we find that the Board's decision contains sufficient indicia of individualized determination to satisfy due process. In particular, the Board notes Berrios' "testimony concerning the military round-up of young males, like himself, in Nicaragua." This statement indicates that the Board

---

mora's motion does not seem attributable to any improper action by the Board. *See infra* p. 35.

**9.** 28 U.S.C. § 2347(c). Other circuits have held without reference to improper action that remand may in certain circumstances be appropriate. *See, e.g., Bernal–Garcia v. INS,* 852 F.2d 144 (5th Cir.1988); *Becerra–Jiminez v. INS,* 829 F.2d 996 (10th Cir.1987); *Martinez de Mendoza v. INS,* 567 F.2d 1222 (3d Cir.1977).

**10.** 933 F.2d at 597. *See also Ramirez–Gonzalez v. INS,* 695 F.2d 1208, 1213–14 (9th Cir.1983) (refusing to remand under § 2347 and noting that the petitioner could have filed a motion to reopen); *Martinez de Mendoza v. INS,* 567 F.2d 1222, 1226 n. 9 (3d Cir.1977) ("[I]n normal circumstances a party asserting new and material

evidence should, in the first instance, resort to [the reopening procedure] rather than invoking our power under § 2347(c).").

**11.** We noted above that the filing of a motion to reopen does not automatically stay execution of a Board ruling. *See supra* n. 6. As we observed in *Kaczmarczyk,* "[t]here thus exists the possibility that unsuccessful asylum applicants may be ordered to leave the country before the Board has ruled on their motions to reopen." 933 F.2d at 597. We therefore reiterate here our presumption that "when an asylum applicant uses a good faith motion to reopen to dispute officially noticed facts, the Board will exercise its discretion to stay the execution of its decision until it has had an opportunity to rule on the applicant's motion." *Id.; see also Gutierrez–Rogue,*

was aware of Berrios' specific claim. The Board also makes an explicit finding that the State Department's *Country Reports on Human Rights Practices* for the years 1984–1985 and 1987–1988, which Berrios claimed the Immigration Judge improperly prevented · him from · submitting, "do not establish his present eligibility for either withholding of deportation or asylum." Again, this finding suggests that the Board was at least aware of the particulars of Berrios' case. Although, as in Zamora's case, the Board did not discuss the relationship between the change in the Nicaraguan government and Berrios' particular claims, the Board's consideration of Berrios' case was not so inadequate as to amount to a denial of due process.

### 2. *Substantial Evidence*

 Like Zamora, Berrios also challenges the Board's finding that he did not have a well-founded fear of persecution based entirely on evidence as to the stability of the Chamorro regime that was not before the Board. As already noted, we will not consider such evidence for the first. time on appeal. The Board's decision is supported by the evidence that was before it at the time it decided Berrios' case.[12] And Berrios' request that we remand to the Board with orders to consider his new evidence has even less basis than did Zamora's, since Berrios has never given the Board *any* opportunity to consider this evidence. Because the Board did not provide Berrios with an opportunity to rebut the noticed facts prior to deciding his case, Berrios has a due process right to have this evidence considered. *Kaczmarczyk*, 933 F.2d at 597. In order to do so, however, he must file a motion to reopen with the Board. *Id.*

 We reject Berrios' argument that he is entitled to asylum based solely on the severity of his past persecution. In *Matter of Chen*, Interim Decision 3104 (BIA 1989), the Board held that where an asylum appli-

cant has been subjected to especially severe persecution in the past, "humanitarian reasons" may warrant the granting of asylum "even if there is little likelihood of future persecution." Berrios contends that his is such an extraordinary case because he fled Nicaragua in order to avoid forcible conscription into the Sandinista military at the age of twelve, a practice that violates "settled principles of United States and international law." Br. at 23. But the Board, which clearly was aware of the nature of Berrios' claim, found that Berrios had not established the sort of extreme persecution necessary to meet the *Chen* standard. Given that Berrios was never in fact forcibly conscripted, or even personally threatened with forced conscription, we do not think that the Board's conclusion was unsupported.

### C. *Felipe Antonio Juresma–Altamirano and Luis Rodriguez–Altamirano*

██ The Altamirano brothers, like both Zamora and Berrios, argue that the Board failed to accord them a sufficiently individualized determination of their claims. Their argument, however, has more merit than does that of Zamora or Berrios. The Board's written opinion dismissing the Altamiranos' appeal is made up *entirely* of boilerplate; there is nothing in the opinion to suggest that the Board was even aware of the particular claims made by the Altamirano brothers. Every paragraph in the decision is identical to a paragraph in the Board's decisions regarding Zamora and Berrios. There is nothing individualized about the Board's analysis in this case. We agree with the Altamiranos that the Board's consideration of their case was so deficient as to deny them due process and therefore vacate the Board's decision and remand the case for additional proceedings consistent with this opinion. We assume that such proceedings will include an opportunity for the brothers to attempt to rebut the Board's conclusion as to the significance of the Nicaraguan elections.

954 F.2d at 773 (adopting the same presumption).

12. The Board noted in its decision that "the new president of Nicaragua has announced a general amnesty covering the hostilities between the former Contra resistance and the Nicaraguan government and an end to military conscription."

This evidence, together with the broad observation that the Sandinistas no longer controlled the Nicaraguan government, certainly tends to support a conclusion that Berrios no longer had a well-founded fear of persecution based on his avoidance of conscription into the Sandinista military should he be returned to Nicaragua.

The brothers also contend that the Board's conclusion that they did not have a well-founded fear of persecution given the change of government in Nicaragua is not supported by substantial evidence. They may well have a point—we are somewhat doubtful that a Board decision which demonstrates no awareness of the particular petitioner's claims could be supported by substantial evidence. Because we vacate the Board's decision on other grounds, however, we need not resolve this issue.

## III. CONCLUSION

For the foregoing reasons, the petitions of Agustin Rhoa–Zamora and Luis Andres Esquivel–Berrios are denied; the petition of Felipe Antonio Juresma–Altamirano and Luis Rodriguez–Altamirano is granted, and the Board's decision is vacated and remanded for further proceedings consistent with this opinion. In addition, the petitioners' motions to adduce additional evidence pursuant to 28 U.S.C. § 2347(c) are denied. If the petitioners wish to present their new evidence to the Board, they should do so by way of a motion to reopen. Because such a motion implements a due process right, *Kaczmarczyk*, 933 F.2d at 597, it must be considered in good faith by the Board. *Supra* at 34 n. 8. We admonish the Board to consider petitioners' motions in that light.