**Erskine ALLEYNE, Petitioner,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 88–3608.**

United States Court of Appeals, Third Circuit.

Argued Jan. 30, 1989.

Decided July 17, 1989.

---

James J. Orlow (argued), Orlow and Orlow, P.C., Philadelphia, Pa., for petitioner.

Mary Reed (argued), Richard M. Evans, Joseph F. Ciolino, Office of Immigration Litigation Civil Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

Before HUTCHINSON, SCIRICA and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Erskine Alleyne petitions for review of an order of the Board of Immigration Appeals (Board) which affirmed an Immigration Judge's finding of deportability. After filing the petition, and within the statutory period for seeking judicial review, Alleyne asked the Board to reconsider or reopen its decision. Although that motion is still pending, we hold that given the Congressional policy evidenced in the immigration statutes we have jurisdiction over the petition for review.

On the merits, Alleyne argues that the Immigration Judge improperly admitted a criminal complaint associated with his conviction for violating various Pennsylvania firearms laws and that there was insufficient other evidence to prove his conviction of possession of a sawed-off shotgun as charged by the Immigration & Naturalization Service (INS). He also claims, even considering the criminal complaint, that there was no evidence of the weapon's barrel length, a requirement he finds in Board precedent, and that the Immigration Judge did not make required findings of fact. Since Alleyne did not raise these issues before the Board, we are unable to consider them. Accordingly, we will deny the petition for review.

I.

Alleyne, a native and citizen of Barbados, entered the United States as a lawful permanent resident in 1971. On December 16, 1980, he was convicted of violating 18 Pa. Cons.Stat.Ann. §§ 908 (Purdon Supp.1988) (repairing, selling or otherwise dealing in, using or possessing any "offensive weap-

on"), 6106 (Purdon 1983) (carrying a firearm in a vehicle or concealed on or about the person without a license) and 6108 (Purdon 1983) (carrying a firearm, rifle or shotgun on public streets or public property of Philadelphia without a license).[1] The INS commenced deportation proceedings on May 27, 1981, alleging that Alleyne had been convicted of possessing and carrying a sawed-off shotgun in violation of the above statutes and was therefore deportable under § 241(a)(14) of the Immigration and Nationality Act, 8 U.S.C.A. § 1251(a)(14) (West Supp.1989).[2]

At a September 24, 1981 hearing before an Immigration Judge, Alleyne admitted the convictions but denied they established the deportable offense charges under § 241(a)(14). Administrative Record (A.R.) at 26–27. No testimony was taken, but copies of the order to show cause and the criminal transcript evidencing the convictions were admitted. The INS also sought to introduce a copy of the criminal complaint, marked as Exhibit 2–A, which states that on August 12, 1980 Sergeant James McDonnell observed Alleyne throw into some hedges an object which proved to be a "sawed off 12 Gauge Shot gun which was loded [sic] with one rifled [sic] slug." *Id.* at 63. Alleyne objected, arguing that the copy was not authenticated and that the complaint was "not part of the trial, disposition or the conviction." *Id.* at 29. The INS then "request[ed] a continuance ... of the Exhibit 2–A proper and certify [sic]" and reserved the right to call Sergeant McDonnell. *Id.* at 33 (ellipsis in original).

Sergeant McDonnell was present when the hearing resumed on November 30, 1981, but the INS declined to call him and did not present an authenticated copy of the criminal complaint. After copies of the Pennsylvania statutes were admitted, the Immigration Judge found that the INS had proven by clear, convincing and unequivocal evidence that Alleyne had been convicted of possessing a sawed-off shotgun and was deportable. *Id.* at 45–46. The hearing was adjourned again so that Alleyne could seek a waiver of deportability under 8 U.S.C.A. § 1182(c) (West 1970). On October 23, 1985, the Immigration Judge denied Alleyne's request for a waiver for lack of prosecution and ordered Alleyne deported. A.R. at 19.

---

1. These statutes, with exceptions not applicable here, provide:

§ 908. Prohibited offensive weapons

(a) Offense defined.—A person commits a misdemeanor of the first degree if, except as authorized by law, he makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon.

. . . . .

(c) Definition.—As used in this section "offensive weapon" means any bomb, grenade, machine gun, sawed-off shotgun, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, dagger, knife, razor or cutting instrument, the blade of which is exposed in an automatic way by switch, push-button, spring mechanism, or otherwise, or other implement for the infliction of serious bodily injury which serves no common lawful purpose.

18 Pa.Cons.Stat.Ann. § 908(a), (c).

§ 6106. Firearms not to be carried without a license

(a) Offense defined.—No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefore as provided in this subchapter.

18 Pa.Cons.Stat.Ann. § 6106(a).

§ 6108. Carrying firearms on public streets or public property in Philadelphia

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

(1) such person is licensed to carry a firearm; or

(2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.Cons.Stat.Ann. § 6108.

2. 8 U.S.C.A. § 1251(a)(14) provides:

(a) General classes

Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

. . . . .

(14) at any time after entry, shall have been convicted of possessing or carrying in violation of any law any firearm or destructive device (as defined in paragraphs (3) and (4)), respectively, of section 921(a) of title 18, United States Code, or any revolver or any weapon which shoots or is designed to shoot automatically or semi-automatically more than one shot without manual reloading, by a single function of the trigger, or a weapon commonly called a sawed-off shotgun[.]

Alleyne appealed, but the Board dismissed the appeal as untimely. We vacated that order, *Alleyne v. INS*, No. 86–3230 (3d Cir. Aug. 19, 1986) (order), and on remand the Board affirmed the order of the Immigration Judge. The Board found that deportability had been established by "clear, convincing and unequivocal evidence," and that "[t]he record before us contains the respondent's record of being convicted on December 16, 1980, of possessing a sawed-off shotgun in violation of 18 G.P.S.A. [sic] §§ 6106, 6108 and 908 (Exhs. 2–4)." A.R. at 1. This timely petition for review followed.

## II.

We consider first a question of our jurisdiction. After filing this petition, and within the time for seeking judicial review, Alleyne asked the Board to reconsider or reopen its decision. We must determine whether that motion, which is still pending, deprives the Board's order of finality and precludes our review.[3]

In *Nocon v. INS*, 789 F.2d 1028, 1033 (3d Cir.1986), we held that the filing of a reconsideration motion does not toll the six month time period for seeking judicial review under the Immigration and Nationality Act. Noting that we can independently review the denial of a motion to reopen or reconsider, we stated that "a proper petition for review must be filed within six months *of the specific order* sought to be reviewed, in compliance with 8 U.S.C. § 1105a(a)(1)." *Id.* (emphasis in original). We reasoned that to hold otherwise would conflict with the Congressional policy to

> prevent undue delay in deportation once the alien's immigration status had been

decided. Enacting the Immigration and Nationality Act, Congress was especially sensitive to what it designated as "the growing frequency of judicial actions being instituted by undesirable aliens whose cases ... are brought solely for the purpose of preventing or delaying indefinitely their deportation from this country." H.R. No. 1086, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Admin.News 2950, 2967. Protracted litigation was viewed by Congress as a means of exploiting the judicial process. Thus, permitting aliens the benefit of additional time from their filing of motions to reopen or to reconsider would directly contravene Congressional intent to prevent successive, piecemeal appeals from being used as a dilatory tactic to postpone the execution of deportation orders. Moreover, the six month appeal period was seen by Congress to be "sufficient and far beyond the realms of any claim of unfairness, for an alien to determine whether he really has a case upon which he should seek judicial review and to prepare therefore." *Id.* at 2973.

*Id.* (footnote omitted).[4]

This result differs from the typical rule in administrative law cases. In *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987), the relevant statute provided that the agency's order was final on the date filed notwithstanding a provision authorizing motions to reconsider or reopen. Nevertheless, the United States Supreme Court, applying the rule developed under the Administrative Procedure Act (APA), 5 U.S.C.A. § 704 (West 1977), concluded that the filing of such a motion rendered the

---

**3.** Alleyne's motion to reopen seeks the discretionary relief of registry under 8 U.S.C.A. § 1259 (West 1970 & Supp.1989). A motion to reopen must be based on new facts, 8 C.F.R. §§ 3.2, 103.5(a) (1988); *Chudshevid v. INS*, 641 F.2d 780, 783–84 (9th Cir.1981), and orders disposing of these motions are independently reviewable. *Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964) (per curiam), *rev'g* 308 F.2d 347 (9th Cir.1962) (per curiam); *Nocon v. INS*, 789 F.2d 1028, 1032–33 (3d Cir. 1986); *Reid v. INS*, 756 F.2d 7, 8 n. 1 (3d Cir.1985); *Garcia v. INS*, 690 F.2d 349, 350 (3d

Cir.1982); *Bak v. INS*, 682 F.2d 441, 442 (3d Cir.1982) (per curiam).

**4.** 8 U.S.C.A. § 1105a(a)(1) was amended on November 18, 1988 to require an alien convicted of an aggravated felony to seek judicial review within sixty days. Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7347(b), 102 Stat. 4181, 4472 (1988). Alleyne petitioned for review before this provision was enacted. We will be referring to the pre-amendment version of this section throughout the opinion.

underlying order nonfinal and tolled the appeals period. *Id.* 107 S.Ct. at 2369.[5]

In *West Penn Power Co. v. EPA,* 860 F.2d 581 (3d Cir.1988), we reached a similar result where a party sought reconsideration before the agency and, simultaneously, judicial review.[6] Unlike the sequential review in *Locomotive Engineers,* there was no risk that a party would inadvertently lose its right to appeal. Thus, one of the reasons supporting tolling was absent. *Id.* at 585. We concluded, however, that we were bound by *Locomotive Engineers,* seeing "no principled way to distinguish between the concept of finality for purposes of triggering the running of a time limit for appeals and the concept of finality for the purpose of appellate court jurisdiction." *Id.* We also found the rule that a reconsideration motion renders an agency's order nonfinal to be good policy, stating:

> We can see no justification for allowing a petitioner to apply to both the court and the agency at the same time. On the contrary, such a regime could lead only to waste of resources on the part of the

agency, the court, or both, without any countervailing benefit.

*Id.* at 586. *See also United Transp. Union v. ICC,* 871 F.2d 1114 (D.C.Cir.1989) (finding reasoning of *West Penn* persuasive and holding that reconsideration motion pending before ICC rendered its order nonfinal, precluding judicial review).

■ *West Penn* does not refer to *Nocon.* However, as we noted in *West Penn,* "[u]nder different circumstances it might have been appropriate to conclude that Congress has made a policy judgment that efficiency is always secondary in the context of judicial review of agency actions. However, the legislative history reflects no such judgment. . . ." 860 F.2d at 587. We believe *Nocon* is distinguishable and that we remain constrained by it because of the Congressional policy underlying the Immigration and Nationality Act. In the immigration context, Congress has determined that the potential for abusive appeals outweighs efficiency concerns. Accordingly, following *Nocon,* we hold that the pending reconsideration motion does not render the order of deportation nonfinal.[7] These policy con-

---

5. *Locomotive Engineers* dealt with an order of the Interstate Commerce Commission, which is reviewable under the Hobbs Act, 28 U.S.C.A. §§ 2341–2351 (West 1978 & Supp.1989). The Hobbs Act, which also forms the basic framework for review of immigration orders, 8 U.S. C.A. § 1105a(a) (West Supp.1989), does not define finality and does not speak to cases where a motion to reconsider or reopen has been filed. The Supreme Court therefore looked to the finality provision of the Interstate Commerce Act, 49 U.S.C.A. § 10327(i) (West Supp.1989), and could "find no basis for distinguishing the language of § 10327(i) from that of § 704 [of the APA]." *Locomotive Engineers,* 107 S.Ct. at 2369.

6. *West Penn* arose under the Clean Air Act, 42 U.S.C.A. §§ 7401–7642 (West 1983 & Supp. 1989). Declaring that it "makes sense" to define finality the same way as in other areas of administrative law generally, we applied the finality provision of the APA. *West Penn,* 860 F.2d at 584.

7. We recognize that both this case and *Locomotive Engineers* involve, to some degree, the review procedures of the Hobbs Act. The finality provision construed in *Locomotive Engineers,* however, was that contained in the Interstate Commerce Act. *See supra* note 5. In addition, while the Immigration and Nationality Act makes the Hobbs Act generally applicable, it expressly provides different time limits for bringing petitions for review. 8 U.S.C.A.

§ 1105a(a)(1). Given these facts and the legislative policy evident in the immigration context, we do not believe *Locomotive Engineers* controls.

Likewise, the fact that this case involves simultaneous review, while *Nocon* involved sequential review, does not counsel against our jurisdiction. As we noted in *West Penn,* simultaneous review presents a less compelling case for finding the underlying order nonfinal. Holding the deportation order nonfinal here would also frustrate the legislative policy of the Immigration and Nationality Act. Judicial review would then logically be available once the reconsideration motion was decided and the underlying deportation order therefore became final. *See West Penn,* 860 F.2d at 585–86 (no principled distinction between finality for time in which to appeal and for conferring appellate jurisdiction; time for filing appeal begins to run when final judgment entered precisely because petitioner then has opportunity for judicial review). This would produce the tolling specifically rejected in *Nocon.*

In addition, we note that deportation is available "[w]hen a *final* order of deportation under administrative processes is made against any alien." 8 U.S.C.A. § 1252(c) (West 1970) (emphasis added). If a reconsideration petition filed within the six-month period destroyed finality, an alien who filed such a motion could effectively obtain the benefits of the automatic

cerns compel the same conclusion with respect to the motion to reopen.[8]

We therefore have jurisdiction and turn to the merits.

### III.

Alleyne raises three claims of error in this Court. He asserts that Exhibit 2–A, the criminal complaint filed by the Philadelphia police for violation of Pennsylvania firearms laws, was inadmissible. Absent this evidence, he contends, it cannot be determined whether his convictions under Pa.Cons.Stat.Ann. §§ 908, 6106 and 6108 constitute the deportable offense charged. He also argues that neither the Immigration Judge nor the Board made the findings of fact required by 8 U.S.C.A. § 1252(b) (West 1970 & Supp.1989) and 8 C.F.R. §§ 242.8(a), 242.14(a), 242.18(a) (1988). Finally, he claims that for purposes of the immigration laws the Board has determined that a sawed-off shotgun must have a barrel length of less than eighteen inches. Since the Pennsylvania laws do not specify barrel length, he contends that, even assuming he was convicted for possession of a sawed-off shotgun the INS did not prove deportability by clear, convincing and unequivocal evidence.

■ 8 U.S.C.A. § 1105a(c) (West 1970) provides in relevant part that "[a]n order of

deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations." This provision precludes review when there is no appeal to the Board. *Bak v. INS,* 682 F.2d 441, 442 (3d Cir.1982) (per curiam) (motion to reopen); *Jacobe v. INS,* 578 F.2d 42, 44 (3d Cir.1978) (review of original deportation proceeding). It also bars consideration of particular questions not raised in an appeal to the Board. *Campos–Guardado v. INS,* 809 F.2d 285, 291 (5th Cir.), *cert. denied,* 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987); *Florez–De Solis v. INS,* 796 F.2d 330, 335 (9th Cir.1986); *Kahlenberg v. INS,* 763 F.2d 1346, 1352 (11th Cir.1985), *cert. denied,* 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986), *mandate recalled and remanded on other grounds,* 796 F.2d 1327 (11th Cir.1986); *Chung Young Chew v. Boyd,* 309 F.2d 857, 861 (9th Cir.1962); *see Cisternas–Estay v. INS,* 531 F.2d 155, 160 (3d Cir.) ("if counsel wishes to preserve an issue on appeal, he must raise it in the proper administrative forum"), *cert. denied,* 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 127 (1976).

Alleyne's notice of appeal to the Board states that the Immigration Judge erred in: a) determining that said alien was deportable based upon his plea of guilty to

stay available upon a petition for judicial review. *Id.* § 1105a(a)(3) (West 1970). This result is at odds with the administrative regulations. *See* 8 C.F.R. § 3.8(a) (1988) ("The filing of a motion to reopen or a motion to reconsider shall not serve to stay the execution of any decision made in the case."); 8 C.F.R. § 103.5 (1988) (similar); *see also Brown v. INS,* 775 F.2d 383, 386 (D.C.Cir.1985) (regulations on motion to reopen do not give alien right to delay deportation hearing pending by Board). An alien who petitioned for judicial review of the underlying order after the motion was denied would then receive an automatic stay unless the court directed to the contrary. Thus, the stay would effectively extend beyond the period contemplated by Congress.

**8.** Alleyne suggests that we adopt a concededly novel doctrine of deferral. *See* Petitioner's Letter of February 23, 1989. He proposes that where a remedy or other issue is presented to the Board while a petition for review is pending we may, in our discretion, defer decision until

the Board has acted while retaining jurisdiction over the petition and the stay of deportation. If the Board granted the motion, the petition for review would be moot. If the Board denied the motion, that action could be consolidated with its original decision through an amended petition for review.

By extending the time for judicial decision, this proposal might grant the alien a longer stay than otherwise available. As this would flow solely from the filing of a motion to reopen or reconsider, it would contravene the administrative regulations. *See supra* note 7. It is also unclear whether, and to what extent, the proposal would conserve judicial resources. While we might decide fewer petitions for review on their merits, we would need to rule on motions to defer and to retain stays. These additional rulings would, at times, be in cases where the Board's action moots the petition for review before we would have considered the petition for review in the absence of deferral. Given these considerations, we decline to adopt petitioner's proposal.

a Statute which the plea covered various offenses some deportable some not[.]

b) The Court erred in premitting [sic] the service to go behind the plea.

c) The Court erred in refusing to continue said matter[.]

A.R. at 17. Alleyne declined to file a brief to further elaborate his position at that time, and did not file a brief in the two years that the matter was on remand from this Court. Thus, in determining what issues were properly presented to the Board, we are limited to this notice of appeal.[9]

▮ None of the errors asserted in that document even arguably raises the issue of whether the Immigration Judge made required findings of fact. To the extent Alleyne asserts that the Board's decision is defective under 8 U.S.C.A. § 1252(b) and 8 C.F.R. §§ 242.8(a), 242.14(a) and 242.18(a)

(1988) because it too lacks specific findings of fact, his argument is without merit. The statute only requires that a determination of deportation be made on a record developed before an Immigration Judge and permits the Attorney General to delegate to those judges the right to make determinations. The regulations by their terms apply to the Immigration Judges, and not to the Board.[10]

The notice of appeal also does not implicate Alleyne's argument that the Board has established a federal standard for sawed-off shotguns necessary for deportation under 8 U.S.C.A. § 1251(a)(14). However, his deportation for conviction of possessing a sawed-off shotgun under a statute that did not contain at least as restrictive a standard, and where there was no evidence that the standard was met, might raise due pro-

9. Alleyne urges us to use a more lenient standard for *pro se* litigants in determining if he raised particular issues. Although we remanded the matter in August 1986, the record of proceedings was apparently not forwarded to the Board until July 26, 1988. The Board issued its decision on August 5, 1988. A.R. at 1. Alleyne claims that his previous counsel died on June 19, 1988 and that he was unrepresented "for the entire period in which the case was actually considered by the Board." Petitioner's Letter of February 7, 1989, at 3.

Apparently, Alleyne's reconsideration motion is based at least in part on the contention that his counsel was ill while the matter was on remand, that this fact was known to the INS and its trial attorney, and that had previous counsel been in good health he might have advised the Board of "essential defects" in the Immigration Judge's finding of deportability. Petitioner's Motion to Reopen and Reconsider ¶¶ 6–9, appended to Respondent's Letter of January 17, 1989. The record is silent on this issue. Therefore, we cannot determine whether the factual predicate for his contention that we should adopt the lenient standard afforded *pro se* litigants with respect to waiver is appropriate and we take no position on the merits of the reconsideration motion which is still pending before the Board.

We also reject Alleyne's suggestion that because the matter was remanded "the Board was under a heightened awareness of the need for it to exercise its regular authority to read the record." Petitioner's Letter of February 17, 1989, at 6. The effect of our order was only to require the Board to consider the appeal. The scope of the issues presented remained defined by the notice of appeal.

10. Alleyne also argues that the Board did not have jurisdiction over the Immigration Judge's

order because it only dealt with a denial of a remedy and did not discuss a contested ground of deportation. Petitioner's Letter of February 17, 1989, at 5. The order, however, specifically states that Alleyne "shall be deported to Barbados as charged." A.R. at 19. In addition, there was a specific finding at one of the hearings that the INS had proven deportability by clear, convincing and unequivocal evidence. Regardless of whether this decision adequately made requisite findings, it was sufficient to permit the Board's review under 8 C.F.R. §§ 3.1(b)(2), 242.-21 (1988).

Nor are we persuaded by Alleyne's argument that the failure to specifically find contested facts is a denial of due process, which we may review even though it was not presented to the Board. Where, as here, a due process claim not presented to the Board involves only a procedural error correctable through the administrative process, we are unable to review it. *Vargas v. United States Dep't of Immigration and Naturalization*, 831 F.2d 906, 908 (9th Cir.1987).

We note that these arguments, like the other constitutional challenges Alleyne makes, were not properly raised in this Court. Alleyne did not file a reply brief to counter the INS's claim that his failure to raise issues to the Board barred our review of these contentions. Instead, he addressed this point only in a supplemental memorandum we requested on the Board's briefing practice and procedure, both initially and on remand, as well as the effect that practice might have on his failure to present issues to the Board. We did not invite the more general responses to the INS's position which were included in Alleyne's supplemental memorandum.

cess problems. Some courts have reviewed constitutional claims not presented to the Board, on the theory that the Board does not have jurisdiction to decide those issues. *See Bagues–Valles v. INS,* 779 F.2d 483, 484 (9th Cir.1985). In this case, the Board could have corrected any constitutional error simply by applying its prior precedent, an action clearly within its competence. *See Vargas v. United States Dep't of Immigration and Naturalization,* 831 F.2d 906, 908 (9th Cir.1987) (due process claim involving correctable "procedural errors" not reviewable unless first presented to Board).

Even assuming that we may consider Alleyne's claim that the Board established such a standard in *In re Rodriguez,* 14 I & N Dec. 706 (BIA 1974), we see no basis for granting the petition for review. Section 241(a)(14) of the Immigration and Nationality Act provides for deportation of an alien who "ha[s] been convicted of possessing or carrying in violation of *any* law ... a weapon *commonly* called a sawed-off shotgun." 8 U.S.C.A. § 1251(a)(14) (emphasis added). The Board found Rodriguez deportable under this section based on his conviction for violating 26 U.S.C. §§ 5841 and 5851, which proscribe possession of an unregistered "firearm." The Board noted that Congress had redefined "firearm" in § 5841 in 1960 to include a "shotgun or rifle having a barrel or barrels of less than 18 inches in length, or a rifle having a barrel or barrels of less than 16 inches in length." *Rodriguez,* 14 I & N Dec. at 707. Looking to the legislative history, it concluded that this change was made to include sawed-off shotguns and sawed-off rifles within the provisions Rodriguez was convicted of violating. Since the shotgun at issue had a barrel of less than eighteen inches, the Board held that "this firearm was a weapon commonly called a sawed-off shotgun" and that Rodriguez had been convicted under a statute punishing the possession of such a weapon. *Id.* at 708.

■ We do not read *Rodriguez* as establishing a federal standard for sawed-off shotguns. Under the plain language of § 241(a)(14), conviction for possession of a sawed-off shotgun in violation of *any* law is a deportable offense. The Board simply looked to whether the relevant federal statutes reached possession of such a weapon and whether Rodriguez had been so charged. That a shotgun with a barrel length satisfying the terms of a federal law is "a weapon commonly called a sawed-off shotgun," does not imply that shotguns with other barrel lengths are not. Conviction of a state statute prohibiting possession of a sawed-off shotgun may also support deportation under § 241(a)(14).

Finally, Alleyne maintains that Exhibit 2–A was improperly admitted and that his conviction for violating 18 Pa.Cons.Stat. Ann. §§ 908, 6106 and 6108 does not, without more, establish that he was convicted of possessing a sawed-off shotgun. Alleyne's third claim of error to the Board— that the Immigration Judge erred in failing to grant a continuance—clearly does not raise the admissibility of Exhibit 2–A.

Likewise, the first issue in the notice of appeal to the Board—that he cannot be deported based on a "plea of guilty to a statute which the *plea* covered various offenses some deportable some not," A.R. at 17 (emphasis added)—does not fairly raise the admissibility of Exhibit 2–A. On its face, this statement indicates that Alleyne pled guilty to at least one deportable offense. It would not alert the Board to his position that it was improper to use Exhibit 2–A to determine the nature of his conviction. To the extent the statement makes the argument that a statute covering both deportable and non-deportable offenses cannot support deportation—the construction adopted by the INS, *see* Brief for Respondent at 8 n. 5—it was also inadequate to raise the admissibility of Exhibit 2–A. The Board properly rejected the purely legal argument based on the statutes' coverage; as long as Alleyne was convicted of possessing a sawed-off shotgun in violation of the statutes it is irrelevant that they also proscribe other acts. The statement does not embrace or include Alleyne's objection to determining that he was convicted of a deportable offense by reference to Exhibit 2–A, especially given

the indication that he had pled guilty to a deportable offense.

The claim that the Immigration Judge erred in "permitting the service to go behind the plea," A.R. at 17, also failed to alert the Board to the issue of whether Exhibit 2–A was admissible. In the immigration context, "going behind the plea" usually refers to a petitioner's attacks on the validity of a conviction by evidence outside the judicial record. *See Longoria–Castenada v. INS*, 548 F.2d 233, 236 (8th Cir.) (petitioner cannot attempt to show he did not commit crime of which he was convicted; "[i]mmigration authorities must look to the judicial record, and may not go behind it to make an independent determination of guilt or innocence."), *cert. denied*, 434 U.S. 853, 98 S.Ct. 169, 54 L.Ed.2d 123 (1977); *Rodriguez*, 14 I & N Dec. at 708 ("A conviction may not be attacked in a deportation proceeding, since there is no authority to go behind the record of conviction to determine the respondent's guilt or innocence[.]"); *see also Avila–Murrieta v. INS*, 762 F.2d 733, 736 (9th Cir.1985) (Immigration Judge properly excluded arguments that petitioner was innocent and that his conviction resulted from selective prosecution); *Zinnanti v. INS*, 651 F.2d 420, 421 (5th Cir. Unit A July 1981) (per curiam) (independent determination of validity of guilty plea not permitted); *Aguilera–Enriquez v. INS*, 516 F.2d 565, 570 (6th Cir. 1975) (determine conviction of a crime by looking only to judicial records), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 776, 46 L.Ed. 2d 638 (1976). Similarly, the nature of an alien's crime is determined by the statute and record of conviction, not from the specific acts surrounding the conviction. *See Okabe v. INS*, 671 F.2d 863, 865 (5th Cir. 1982) (whether crime involves moral turpitude depends on inherent nature of crime and is determined solely from the statute and record of conviction); *McNaughton v. INS*, 612 F.2d 457, 459 (9th Cir.1980) (per curiam) (look to statutory definition or nature of crime, not specific conduct); *Castle v. INS*, 541 F.2d 1064, 1066 n. 5 (4th Cir. 1976) (per curiam) (look to crime for which convicted, not specific act resulting in conviction).

Alleyne's assertion of "going behind the plea" may have alerted the Board to the admission of evidence outside the judicial record to establish the nature of the crime for which he was convicted. Although it flirts with his argument that Exhibit 2–A is not part of that record, it is not specific enough to focus the Board's attention on that document. This is especially true since the notice of appeal suggests Alleyne pled guilty to a deportable offense. While a brief may have made clear Alleyne's objection, he declined to file one.

Under the circumstances, the Board could not have been expected to address the admissibility of Exhibit 2–A. *See* C. Gordon and G. Gordon, 2 *Immigration Law and Procedure*, § 62.10[3] (1988) ("[s]pecificity [in notice of appeal] is especially important if counsel does not ask for oral argument and files no brief.... Generalized and vague statements of grounds for appeal in the Notice of Appeal do not inform the BIA what counsel thinks it should look for when it reviews the record."). As the Board recently stated in summarily dismissing an appeal from an Immigration Judge's denial of discretionary relief,

> "it should be clear [from the notice of appeal] whether the alleged impropriety in the decision lies with the immigration judge's interpretation of the facts or his application of legal standards. Where a question of law is presented, supporting authority should be included, and where the dispute is on the facts, there should be a discussion of the particular details contested."

*Townsend v. United States Dep't of Justice INS*, 799 F.2d 179, 182 (5th Cir.1986) (per curiam) (quoting *In re Valencia*, Interim Decision No. 3006 (BIA 1986) (citation omitted)); *see also* 8 C.F.R. § 3.1(d)(1–a) (1988) (Board may summarily

dismiss if party fails to specify reasons for appeal in notice of appeal); *Bonne–Annee v. INS,* 810 F.2d 1077, 1078 (11th Cir.1987) (per curiam) (where notice of appeal to Board failed to state specific grounds of appeal and no brief filed, summary dismissal appropriate); *Reyes–Mendoza v. INS,* 774 F.2d 1364, 1364–65 (9th Cir.1985) (where six word statement of reasons in notice of appeal to Board failed to specify grounds for appeal and no brief filed, summary dismissal appropriate).

Finally, we recognize that Alleyne objected to Exhibit 2–A before the Immigration Judge. This is not, however, a sufficient substitute for providing the Board an opportunity to correct errors in the administrative proceedings. Accordingly, we are unable to consider Exhibit 2–A's admissibility.[11]

### IV.

For the reasons set forth above, the petition for review will be denied.

---

**11.** We reject Alleyne's argument that we may review this issue because the failure to prove a conviction by the means enumerated in 8 C.F.R. § 287.6(a) (1988) denies him due process. If there was error, it was correctable by the Board. *See Vargas,* 831 F.2d at 908.