

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-14-2004

# Ren v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2812

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Ren v. Atty Gen USA" (2004). *2004 Decisions.* Paper 838.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/838

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2812

YI YUN REN,

Petitioner

v.

JOHN ASHCROFT, Attorney
General of the United States,

Respondent

On Petition for Review of a Final Order
of the Board of Immigration Appeals
(No. A77-772-338)

Submitted Under Third Circuit LAR 34.1(a)
March 23, 2004

Before: ROTH, AMBRO, and CHERTOFF, Circuit Judges

(Opinion filed: April 14, 2004)

OPINION

AMBRO, Circuit Judge

Yi Yun Ren challenges the decision of an immigration judge ("IJ") denying his

applications for asylum and withholding of removal and the affirmance of that decision

by the Board of Immigration Appeals ("BIA"). For the reasons that follow, Yi's petition

for review is denied.

## I. Factual and Procedural Background

Yi is a native and citizen of the People's Republic of China (PRC). According to

his testimony before the IJ, Yi's wife was forced to have an intrauterine device (IUD)

inserted after the birth of their first child in 1983. Despite this action, Yi's wife gave

birth again in 1985. After the second child was born, the Birth Control Office ("BCO")

informed Yi that his wife would have to be sterilized. In response to this news, Yi sent

his wife to live with a relative in another town. When BCO officials came seeking his

wife, Yi refused to tell them where she was. As a result, he was taken to a nearby

hospital and sterilized. In 1987, however, Yi's wife gave birth to their third child.

Thereafter, she was ultimately located by the BCO and sterilized at the same hospital

where Yi's (obviously ineffective) sterilization was performed.

As a result of these actions, Yi formed negative opinions of the PRC's birth

control policy.[1] In May 1998, he publicly denounced this policy at his nephew's school

graduation. As a result, Yi was summoned by the Public Security Bureau. Fearing he

would be sent to jail, Yi did not report to the Bureau and went into hiding. (Yi's wife,

---

[1] It appears that Yi was also critical of the PRC leadership in general. In June 1989, he participated in a demonstration in Guangzhou Square as a show of support for the student protests in Tiananmen Square. He alleges that he was arrested, jailed for fifteen days and beaten during his detention.

however, remained in their hometown, and there is no indication she has ever left.) After approximately a year in hiding, Yi was smuggled out of China with the help of a friend. He attempted to enter the United States in May 1999, but was stopped at entry by immigration officials.

The Notice to Appear charged Yi with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I) — an alien not in possession of a valid entry document.[2] In March 2000, Yi appeared with counsel before the IJ. He conceded removability, but indicated his desire to apply for asylum, withholding of removal[3] and protection under the Convention Against Torture. Yi claimed that he would be jailed, fined and/or beaten if he returned to China due to his public opposition of the PRC's birth control policy, his failure to report to the Public Security Bureau and his departure from China in an illegal manner. Yi submitted supporting documentation for his claim that both he and his wife had undergone sterilization procedures — including an x-ray report, a sterilization certificate and a letter from his wife. As required for official documents, the x-ray and

_____

[2] Yi was also charged with being removable under 8 U.S.C. § 1182(a)(6)(C)(i), use of a fraudulent document to procure an immigration benefit. He denied the charge. The IJ concluded that the INS failed to meet its burden of proof and that Yi was not removable on this ground.

[3] Applications for asylum are deemed to be simultaneous applications for withholding of removal. 8 C.F.R. § 208.3(b). The Attorney General has the discretion to grant asylum to an alien who has demonstrated a "well-founded fear" of future persecution. Chang v. INS, 119 F.3d 1055, 1059 (3d Cir. 1997). Withholding of removal requires an alien to satisfy the more demanding "clear probability" of persecution standard. Id. Because failure to meet the less demanding asylum standard precludes withholding removal, the IJ focused on Yi's asylum petition. We do the same.

3

certificate were sent overseas for investigation and verification. 8 C.F.R. § 1287.6(b).

A hearing on the merits was held in September 2001. After taking the matter under advisement, the IJ concluded that Yi's claims lacked credibility because, according to the consular investigation, the x-ray and sterilization certificate were forgeries.[4] Therefore, he could not establish past persecution or a well-founded fear of future persecution. See 8 U.S.C. § 1101(a)(42)(A) (stating that a "coercive population control program" constitutes persecution on the basis of political opinion). Accordingly, Yi's applications for relief were denied, and he was ordered to be removed to China.

The BIA affirmed the IJ's decision without opinion in June 2003, and a timely petition for review followed. Before us Yi argues that the IJ's findings were not supported by substantial evidence and that he was denied due process.[5]

## II. Jurisdiction and Standard of Review

We have jurisdiction to review the BIA's order of removal under 8 U.S.C. § 1252. As the BIA affirmed the IJ's decision without opinion, we look to the underlying findings made by the IJ. Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002).

The IJ's findings — in regard to both persecution and credibility — are reviewed

---

[4] The IJ also noted various inconsistencies and discrepancies in Yi's applications and testimony. As they are minor and less relevant than the forged documents, we do not focus on them.

[5] Yi did not challenge before the BIA, and does not challenge here, the IJ's denial of relief under the Convention Against Torture. Accordingly, he has waived any right to appeal this issue. See Alleyne v. INS, 879 F.2d 1177, 1182 (3d Cir. 1989).

4

for substantial evidence. Balasubramanrim v. INS, 143 F.3d 157, 161 (3d Cir. 1998). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Senathirajah v. INS, 157 F.3d 210, 216 (3d Cir. 1998) (internal quotation marks and citation omitted). Under this standard, the IJ's findings "must be upheld unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001) (citations omitted).

Yi has the burden of supporting his asylum claim through credible testimony of either past persecution or a well-founded fear of future persecution. Id. at 482. Credible testimony, even without corroboration, sometimes may be sufficient to meet this burden. 8 C.F.R. § 1208.13(a). Our prior decisions make clear, however, that "the INS may require documentary evidence to support a claim, even from otherwise credible applicants, to meet their burden of proof." Gao, 299 F.3d at 272 (citing Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001)).

As for credibility determinations, the IJ also is required to provide specific, cogent reasons to support these findings. Senathirajah, 157 F.3d at 216. Minor inconsistencies or admissions are an inadequate basis for a finding of adverse credibility. Gao, 299 F.3d at 272. "The discrepancies must involve the 'heart of the asylum claim.'" Id. (citation omitted).

5

## III. Analysis

When used in immigration proceedings, official records "shall be evidenced by an official publication . . . or by a copy attested by an officer so authorized," and the "attested copy . . . must be certified by an officer in the Foreign Service of the United States, stationed in the foreign country where the record is kept."  8 C.F.R. § 1287.6(b). Because the x-ray and sterilization certificate submitted by Yi were not authenticated, they were sent to Guangzhou, China for a consular investigation.  Upon communicating with and receiving letters in return from both the Fujian Provincial Hospital and the Aojiang Town BCO, the investigator concluded that the x-ray and certificate were forgeries.  This report was provided to Yi over three months before his September 2001 hearing.  Yet at the hearing, Yi's counsel did not object to the admission of the report or put any contrary evidence into the record.  The IJ determined that the evidence of forgery and lack of explanation or rebuttal indicated an overall lack of credibility.

The remainder of Yi's evidence was also found lacking.  A report by an American doctor analyzing Yi's low sperm count was inconclusive, indicating only that test results "might be consistent" with an earlier unsuccessful sterilization.  Another report by an American doctor was based on the suspect x-ray.  Further, the IJ determined that the credibility of Yi's testimony and the letter purportedly submitted by his wife had been seriously undermined by the submission of forged documents.

Yi's only substantive argument is that the consular investigation was unreliable.

6

He objects to the report's uncritical acceptance of the representations made by the Fujian Provincial Hospital and the Aojiang Town BCO. In other words, Yi asks how are we to know that hospital and BCO officials are not themselves lying when they state that Yi's x-ray and sterilization certificate are forgeries. He claims that his testimony has not been proven unreliable and is sufficient to support a finding of past persecution.

This argument is misplaced. Yi has the ultimate burden of proving past persecution. Thus the INS need not prove that the PRC officials were telling the truth. Yi must demonstrate that they were lying. He presents, however, no real evidence — only broad allegations that do not address his specific case. Yi had over three months to marshal evidence to rebut or explain the consular report. Yet he offered no evidence whatsoever, despite being given ample opportunity to do so at the September 2001 hearing. The IJ gave specific and cogent reasons to doubt Yi's credibility. On the basis of this record, we cannot say a contrary result is compelled.

For similar reasons, we also reject Yi's due process argument. Yi himself admits that the IJ's actions and words do not indicate any type of bias or prejudice. He claims, however, that he was blind-sided because the IJ never discussed the forged documents, the INS declined to cross-examine Yi, there was no mention of a lack of corroborating evidence and there was no mention of any written or testimonial discrepancies or inconsistencies. Yi, however, misunderstands the requirements of due process. He received the consular report and was given the opportunity to object to its introduction

7

into evidence. The IJ allowed Yi to present his case in full. The IJ also exhibited patience when he failed to understand Yi's testimony, asking Yi for clarification and giving him an opportunity to respond. The IJ even conferred with Yi's counsel several times to ensure that he did not wish to present additional evidence. To go further — to alert Yi to the weaknesses of his case — was not the IJ's responsibility.

* * * * *

In this context, we deny Yi's petition for review.