

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-31-2004

# Pjetrushi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4594

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Pjetrushi v. Atty Gen USA" (2004). *2004 Decisions.* Paper 383.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/383

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-4594
_____

FERDINAND PJETRUSHI; MANIOLA PJETRUSHI,

Petitioners

v.

JOHN ASHCROFT, Attorney General of the United States,

Respondent

_____

ON APPEAL FROM THE BOARD OF IMMIGRATION APPEALS

(Nos. A73 646 888 and A73 639 589)
_____

Submitted Under Third Circuit LAR 34.1(a)
January 26, 2004

BEFORE: NYGAARD, FUENTES, and STAPLETON, Circuit Judges.

(Filed: August 31, 2004)

_____

NYGAARD, <u>Circuit</u> <u>Judge</u>.

Appellants Ferdinand and Maniola Pjetrushi petition for review of the final order of deportation issued by the Board of Immigration Appeals ("BIA"). They challenge the denial of their application for asylum and withholding of deportation, as well as the refusal to grant their request for adjustment of status. We will deny the petition.

I.

The Pjetrushis are natives and citizens of Albania. During testimony before the Immigration Judge ("IJ"), Ferdinand Pjetrushi claimed that because he and his family were Roman Catholic, they had suffered persecution under the former Communist regime in Albania. Pjetrushi said he was denied the opportunity to study medicine because of his religion, and arrested for speaking against the government when he was seventeen years old.[1] Without any trial, he was held for eight months in solitary confinement under oppressive conditions, and then sent to a labor camp for two years. He was finally

---

1.     While the IJ found Pjetrushi's story of persecution credible, he asserted that it was more likely Pjetrushi was imprisoned because of his relationship to his uncle, a Catholic priest, than because of his own political opinions. This distinction, however, has no effect on the outcome of the case.

released, but was forced to serve in the Albanian army for two years. After his discharge, he found work in the government's water department.

In 1993, the Pjetrushis fled from Albania to Italy, where they spent three months before coming to the United States. They admit to having entered the United States fraudulently, presenting themselves as holders of Italian passports.

The Pjetrushis were charged with deportability in 1996, for having entered the United States without inspection. The IJ amended the Order to Show Cause, however, to accurately reflect that they had been inspected, but had fraudulently used identification documents that did not belong to them. The Pjetrushis conceded deportability, but sought relief in the form of asylum, withholding of deportation, and voluntary departure.

Although the IJ found that Ferdinand Pjetrushi's testimony regarding his past persecution in Albania was credible and created the presumption of a well-founded fear of future persecution, the IJ also considered evidence of changed country conditions. Since the fall of Communism in 1990, the IJ found, Albania has advanced toward establishing a democracy and guaranteeing basic freedoms, and people who were formerly persecuted are now receiving favored treatment from the government. The IJ found that these changed conditions rebutted the presumption of future persecution, and denied the Pjetrushis' application for asylum and withholding of deportation.

The Pjetrushis appealed to the BIA. While this appeal was pending, however, they filed a motion to remand their case to the IJ to consider their applications

3

for an adjustment of status, based on the fact that Ferdinand Pjetrushi's employer had filed a visa petition on his behalf. The BIA granted this motion to remand. The IJ denied the request for an adjustment of status, finding that because the Pjetrushis entered the country with fraudulent documents, they were inadmissible. The IJ held that the Pjetrushis did not qualify for a waiver of inadmissibility, and as a result, could not be granted an adjustment of status. The BIA affirmed both of the IJ's decisions in a brief *per curiam* order. The Pjetrushis filed this petition for review.

## II.

Our decision on the Petrushis' asylum claim is controlled by our standard of review. When the BIA summarily affirms a decision of an IJ, we look to the reasoning of the IJ in our review of that decision. *Dia v. Ashcroft,* 353 F.3d 228, 244 (3d Cir. 2003) (en banc). We must affirm the IJ's findings if they are supported by "substantial evidence," such that "a reasonable fact finder could make such a determination." *Id.* at 249. "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Senathirajah v. INS,* 157 F.3d 210, 216 (3d Cir. 1998) (internal citation and quotation omitted).

Section 208(b) of the Immigration and Nationality Act ("INA") delegates discretion to the Attorney General to grant asylum to any alien who is a refugee. 8 U.S.C. § 1158(b) (2003). A refugee is a person unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race,

religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (2003). An alien can demonstrate a well-founded fear of future persecution by showing that he "has a genuine fear, and that a reasonable person in [his] circumstances would fear persecution" upon return to his native country. *See Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).

A finding of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution, but this presumption can be rebutted if a fundamental change of circumstances renders the fear no longer well-founded. 8 C.F.R. § 208.13(b)(1) (2003). If an alien has established a credible claim of past persecution, but cannot demonstrate a well-founded fear of future persecution, the Attorney General still has the discretion to grant asylum if the alien can demonstrate "compelling reasons for being unwilling or unable to return to [his or her] country arising out of the severity of the past persecution." 8 C.F.R. § 208.13(b)(1)(iii)(A) (2003); *In re Chen,* 20 I. & N. Dec. 16 (BIA 1989) (granting asylum for humanitarian reasons to an alien who had suffered permanent and crippling injuries as a result of persecution).

Given the substantial evidence standard, we are unable to say that a reasonable fact finder would have been "compelled to conclude to the contrary" of the IJ's decision. 8 U.S.C. § 1252(b)(4)(B). The IJ considered the evidence of past persecution to be credible and appropriately concluded that it established a regulatory presumption that the Pjetrushis had a well-founded fear of future persecution. 8 C.F.R. §

5

208.13(b)(1). The IJ reasonably concluded, however, that the vast changes that have taken place in Albania since 1990 rebut this presumption. 8 C.F.R. § 208.13(b)(1)(i)(A). In making this finding, the IJ appropriately relied upon country reports provided by the State Department, which we have previously identified as highly probative of country conditions. *See Kayembe v. Ashcroft,* 334 F.3d 231, 235 (3d Cir. 2003) (citing *Lal v. INS,* 255 F.3d 998, 1023 (9th Cir. 2001) and *Gonahasa v. INS,* 181 F.3d 538, 542 (4th Cir. 1999)).

The IJ was also well within the bounds of his discretion in deciding that although deplorable, the persecution suffered by Ferdinand Pjetrushi was commonplace in Albania at that time, and was not severe enough to grant him asylum for humanitarian reasons. 8 C.F.R. § 208.13(b)(1)(iii)(B). As a result, we will deny the Petrushis' petition as to the denial of asylum and withholding of deportation.

III.

The Pjetrushis also contest the IJ's refusal to grant them an adjustment of status, and the affirmance of this decision by the BIA. Because the Pjetrushis concede that they gained entry into the United States by using fraudulent documents, they are inadmissible.[2] 8 U.S.C. § 1182(a)(6)(C)(i). As such, they must gain a waiver of

---

2.     As noted above, the Order to Show Cause initially charged the Pjetrushis with deportability for having entered the country without inspection. This charge was amended by the IJ, because Ferdinand Pjetrushi's testimony indicated that they had, in fact, been inspected, but had gained entry by fraudulently claiming to be the holders of

(continued...)

inadmissibility before they can receive an adjustment of status. *See* 8 U.S.C. §§ 1182(a) and 1182(i). The IJ found the Pjetrushis ineligible for a waiver of inadmissibility.

In their brief to this Court, the Pjetrushis claim for the first time that the charge against them was amended in a way that violated the Due Process Clause and the prohibition of Double Jeopardy. See U.S. Const. amend. V. This claim is of dubious merit, especially because the amendment to the charge was made with the explicit consent of their attorney. In any case, we may not review this claim beacuse it was not raised before the IJ or the BIA, and therefore has not been exhausted. See 8 U.S.C. § 1252(d)(1) (2002) setting exhaustion requirement); Alleyne v. INS, 879 F.2d 1177, 1182 (3d Cir. 1989) (noting that the exhaustion requirement "bars consideration of particular questions not raised in an appeal to the Board").

In addition, the Pjetrushis contend they are not required to get a waiver of inadmissibility, asserting that their fraud was excusable because it was necessary to escape persecution. This argument has two basic problems. First, when the Pjetrushis obtained the illegitimate passports they were in Italy, and in no immediate danger of persecution. Second, the statute that deems aliens inadmissible if they use fraud to gain entry to does not provide an exception for necessity.

---

2. (...continued)
Italian passports. The Order to Show Cause was thus amended to charge the Pjetrushis with deportability for having obtained entry through fraud. *See* 8 U.S.C. § 1182(a)(6)(C)(i) (2003).

As a final matter, this case arguably presents the issue of whether the IJ's application of 8 U.S.C. § 1182(i), as revised by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, was impermissibly retroactive under the Supreme Court's decisions in Landgraf v. USI Film Products, 511 U.S. 244 (1994), and INS v. St. Cyr, 533 U.S. 289 (2001). We may not consider this issue, however, because it was not exhausted. See 8 U.S.C. § 1252(d)(1); Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003) ("[A]n alien is required to raise an exhaust his or her remedies as to each claim or ground for relief if he or she is to preserve the right of judicial review of that claim." (citing Alleyne, 879 F.2d at 1182)).

IV.

For the foregoing reasons, we will deny the petition for review.