**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3948
_____

BAORONG SUN,
                                        Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A087-448-122)
Immigration Judge: Steven Morley
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 15, 2013

Before:  SMITH, GREENAWAY, JR., and SHWARTZ, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 30, 2013)
_____

OPINION
_____

PER CURIAM

    Baorong Sun ("Sun") petitions for review of the Board of Immigration Appeals' final

order of removal.  For the reasons that follow, we will deny the petition for review.

1

Sun, a native and citizen of China, entered the United States without inspection on or about September 8, 2008, and is removable under Immigration & Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. In December, 2008, Sun applied for asylum, withholding of removal, and for protection under the Convention Against Torture, claiming that he was persecuted in China for participating in religious services sponsored by an unregistered Methodist church. He was interviewed by an asylum officer, but the officer found that he was not credible and referred his case to the Immigration Court.

Sun testified at his merits hearing on February 28, 2011 that he was born in Fuzhou City, in Fujian Province. In early 2007 he lost his job and became depressed. He was introduced to an "underground" or unregistered church, and, after attending, his mood improved. With help from church members he also found another job. Eventually, he was baptized. Then, on April 20, 2008, the police raided his church and arrested all of the attendees. Sun was detained for 20 days, interrogated, and beaten for refusing to disclose the names of his church leader and fellow church members. His wife paid 15,000 RMB to obtain his release, which occurred on May 10, 2008. Sun sought medical treatment on May 10, 2008 at the Lianjiang District hospital, according to documentary evidence he submitted. Following his release, Sun was required to report to the police and warned not to attend any more underground church services. He reported to the police several times until he departed China in September, 2008. After he left, his wife moved to a new address about an hour's drive away because police kept harassing her by asking about him.

2

In addition to Sun's testimony, he submitted a detention certificate and his wife submitted a letter from China; he also documented his membership in a church in the United States. Sun also submitted a letter from Jian Yin Chi, his wife's cousin, who wrote that he had introduced Sun to the underground church in July, 2007. Chi corroborated Sun's arrest, beating, and fine, and stated that he had "heard" that police "did not issue a receipt" for the fine but instead, "behave[ed]" like "bandits," A.R. 331, essentially stealing the money. Sun also submitted the 2008 State Department Human Rights Report on China, which states that Protestantism is a recognized religion in China. The Report further states that the "government tried to control and regulate religious groups, particularly unregistered groups" but "freedom to participate in religious activities continued to increase in many areas." A.R. 247. The Report states that the handling of unregistered Protestant groups varied in different regions of the country. See id. at 248. In some regions large unregistered groups met openly; in others, meetings of more "than a handful of family members and friends were strictly proscribed." Id. Church leaders were sometimes the target of abuse, and unregistered groups were more likely to have problems with Chinese authorities when they engaged in political activism. See id.

Following the hearing, the Immigration Judge denied all relief. The IJ found that Sun lacked credibility, identifying "troubling" inconsistencies concerning: (1) whether his wife, who remains in China, continued to be harassed by police after she moved; (2) whether the police issued a receipt for the fine his wife paid to obtain his release; and (3) what bank account his wife used to pay the fine. There were other weaknesses in Sun's case, including that he did not corroborate his claim that his church was raided by submitting a letter from one of the many other attendees. The letter he offered from his wife's cousin was from a church

member who was *not* present when the police raided the church in April, 2008. The IJ also noted other minor discrepancies that existed between Sun's testimony before the asylum officer and his testimony in Immigration Court. Further, the IJ found that the Human Rights Report only partially corroborated Sun's testimony in that the report did not specifically show that harsh treatment of underground churches was the norm, or that it at least happens on occasion in the area where Sun lived. The IJ concluded separately that Sun's evidence was insufficient to show that it is more likely than not that he would be tortured upon his return to China, 8 C.F.R. §§ 1208.16(c), 1208.18(a). The IJ ordered that Sun be removed to China.

Sun appealed, and on September 21, 2012, the Board of Immigration Appeals dismissed his appeal. The Board found no clear error in the IJ's credibility finding and held that it was based on specific and cogent reasons, including significant inconsistencies within Sun's own testimony in Immigration Court, and inconsistencies between his testimony and his documentary evidence. The Board noted that Sun initially testified that his wife was not harassed after she moved to a new address, but he later testified differently that she was still being harassed after she moved. The affidavits from his wife and his wife's cousin failed to mention that his wife was still being harassed after she moved. The Board rejected as unconvincing Sun's explanation that the failure to mention his wife's further harassment did not mean no further harassment occurred. The Board noted that Sun testified that he actually saw the receipt for the 15,000 RMB fine his wife paid police before he left China and that he had submitted the receipt as evidence, but these things contradicted his testimony before the asylum officer that no receipt was given and contradicted his wife's cousin's recollection that

4

the police gave no receipt and essentially stole the money. The Board rejected as unconvincing Sun's argument that he misunderstood the asylum officer's question about the receipt.

Last, the Board noted that, although Sun testified that his wife paid the 15,000 RMB fine from savings and he had submitted a copy of a passbook savings account opened in July, 2008 as evidence, he then testified that this was not the savings account from which the fine was paid and he did not explain why he had submitted this passbook in support of his claim. The Board then held that it was reasonable under the circumstances for the IJ to have demanded corroborating evidence, including letters from church members corroborating the April, 2008 incident and background evidence regarding how government officials treat members of unregistered churches in Sun's area. Ultimately, the Board concluded that the IJ properly denied relief because Sun, without a credible case of past or future persecution, and without sufficient independent evidence to corroborate his case, failed to meet his burden of proof. The Board further held that Sun's CAT claim was waived because he had failed to argue it in his brief.

Sun has timely petitioned for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). Where the Board substantially relies on the IJ's adverse credibility determination and corroboration findings, we review both decisions. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). Sun argues that the IJ unreasonably required corroboration, that he was unable to produce affidavits from church members who were present during the raid because they too were persecuted, and that the IJ unreasonably relied on minor aspects of his claim, like the RMB fine receipt, in finding that his claim was not credible. See Petitioner's Brief, at 28-29.

5

We will deny the petition for review. An applicant for asylum has the burden of credibly and persuasively establishing that he is unable or unwilling to return to his home country "because of [past] persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A); see 8 C.F.R. § 1208.13(a); Abdille v. Ashcroft, 242 F.3d 477, 482 (3d Cir. 2001). We review an adverse credibility determination under the substantial evidence standard. See Xie, 359 F.3d at 243. Under this deferential standard, we uphold the IJ's credibility determination unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Under the REAL ID Act, in making a credibility determination, the IJ may consider "the totality of the circumstances," and may base the determination on "the demeanor, candor, or responsiveness of the applicant," "the inherent plausibility" of the applicant's account, "consistency" between the applicant's statements, the "internal consistency" of each statement, and the consistency of such statements with other evidence of record "without regard to whether an inconsistency . . . goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). Corroborating evidence may be required, especially where the applicant's testimony is not credible. Cf. 8 U.S.C. § 1158(b)(1)(B)(ii). Corroboration may be required where it is (1) reasonable to expect the applicant to produce corroboration, (2) the applicant fails to corroborate, and (3) the applicant fails to adequately explain that failure. Chukwu v. Att'y Gen. of U.S., 484 F.3d 185, 191-92 (3d Cir. 2007) (citing Toure v. Att'y Gen. of U.S., 43 F.3d 310, 323 (3d Cir. 2006). See also Sandie v. Att'y Gen. of U.S., 562 F.3d 246, 252-53 (3d Cir. 2009) (same).

6

Substantial evidence supports the agency's determination that Sun was not credible, a determination properly made on the basis of inconsistencies between the testimony he gave in Immigration Court and before the asylum officer, and the documentation he offered in support of his application. Sun submitted a medical statement to support his claim that he was beaten, evidence of his arrest and detention, and evidence that he was a church member. But, as the IJ observed, he and his wife should have presented a consistent and coherent case concerning whether or not she received a receipt from the police for the fine she paid, and where the money came from to pay the fine. The failure to present a consistent case on these points damaged Sun's credibility. Sun also should have presented a consistent case concerning whether his wife is still being harassed in China. We agree with the Board that Sun was unable to supply a convincing explanation for these inconsistencies. See Thu v. Att'y Gen. of the U.S., 510 F.3d 405, 412 (3d Cir. 2007). Moreover, as explained by the agency, the State Department Report only partially corroborates Sun's claim because it specifically states that government officials' handling of unregistered Protestant groups varies from region to region.

In the absence of credible testimony and sufficient background evidence, it was necessary for Sun to corroborate his claim, see Sandie, 562 F.3d at 252-53. It was not unreasonable for the agency to seek corroboration of the April, 2008 events from one of the many other church members who were in attendance when the church was raided, and not unreasonable for the agency to demand more specific country conditions evidence concerning how unregistered churches are treated in the area where Sun lived. Sun had a full and complete opportunity in Immigration Court to provide a convincing explanation for his inability to better corroborate his claim. The agency determined that Sun failed to provide

7

sufficient independent evidence to corroborate his case and the record does not compel a contrary conclusion.

An alien who establishes past persecution enjoys a presumption of a well-founded fear of future persecution, Lukwago v. Ashcroft, 329 F.3d 157, 174 (3d Cir. 2003), but, if the alien cannot show past persecution, he may still establish a well-founded fear of future persecution by credibly demonstrating a subjective fear of persecution, and that a reasonable person in the alien's circumstances would fear persecution if returned to the country in question, Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003). The record here does not compel the conclusion that Sun credibly and persuasively established that he is unable or unwilling to return to China because of past persecution on account of his religious practices, or that he has a well-founded fear of future persecution under the burden of proof required for asylum. He is necessarily ineligible for withholding of removal, see Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430-32 (1987), and we lack jurisdiction over his CAT claim because he failed to argue it before the Board and because he must exhaust all administrative remedies. 8 U.S.C. § 1252(d)(1); Alleyne v. Immigration & Naturalization Serv., 879 F.2d 117, 1182 (3d Cir. 1989).

For the foregoing reasons, we will deny the petition for review.